**TEXAS DEPARTMENT OF PUBLIC SAFETY and David Hullum, In His Individual Capacity, Appellants,**

**v.**

**David TANNER and Mary Schermerhorn, Individually, and Van Horn, Inc. a/k/a World of Products Cooperative and d/b/a Schermerhorn's, Appellees.**

No. 04–95–00389–CV.

Court of Appeals of Texas, San Antonio.

Aug. 21, 1996.

---

**9.** Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T

CODE ANN. § 74.003(b) (Vernon 1988).

# 733

Susan E. Werner, Assistant Attorney General, Austin, for Appellant.

Jacqueline Lucci, Benson Musslewhite, Andrew S. Pikoff, Houston, for Appellee.

Before HARDBERGER, GREEN and DUNCAN, JJ.

HARDBERGER, Justice.

This interlocutory appeal arises from the trial court's denial of summary judgment based on official immunity. Appellees sued the appellants, the Texas Department of Public Safety (DPS) and its employee, Sgt. David Hullum, for investigating their business practices. Hullum and DPS moved for summary judgment on the basis of official immunity; and, in two points of error, they contend the trial court erred in denying their motion. We affirm.

## Summary of Facts

In 1988, David Tanner and Mary Schermerhorn began a marketing business called Van Horn, Inc., also known as World of Products Cooperative (WPC), doing business as Schermerhorn's (collectively, appellees). Individuals purchased WPC "membership" by paying $50 to their sponsor, $50 to WPC's advisory board, and $50 to WPC. The new member would receive sponsorship fees if he or she recruited two more individuals. As new members recruited more people, the original member became a member of the advisory board and would receive additional fees. Members could also purchase goods at discounted prices through a mail-order catalog, and those in WPC's top levels would receive a percentage of sales.

In November 1988, Hullum's supervisor asked him to interview a Federal Express employee about a possible pyramid or "endless chain" scheme involving WPC. During his investigation, Hullum received advice about WPC's possible illegality from an assistant district attorney, the state securities board, and the Texas attorney general's office. Hullum also spoke to Bruce and Kristy Sommers about their recruitment into WPC.

In December 1989, Hullum signed a probable cause affidavit, and appellees were arrested for selling unregistered securities. However, they were not indicted nor was their case ever presented to the grand jury. The criminal charges against both appellees were dismissed in March 1990 because the state securities board found no violation of the securities statutes.

A concurrent civil suit filed by the attorney general against Schermerhorn under the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) continued for another nine months after the criminal charges were dropped. The case settled on January 30, 1991, without a finding of fault, although Schermerhorn agreed to stop this type of marketing. She also agreed to reimburse the state $7,500 for investigation costs. Although the criminal and civil cases had concluded, Hullum and DPS kept their file open for an additional eight months, finally bring-

ing a three-year investigation to a close on September 16, 1991.

■ Appellees sued Hullum and DPS, as well as Federal Express Corporation and its employee, Daniel Ibarra. While appellees' pleadings do not clearly state the capacity in which Hullum is sued, the parties agree on appeal that he is sued in his individual capacity.[1] Appellees' causes of action included, among others, infliction of emotional distress, tortious inference with business, invasion of privacy, violation of the DTPA, and violation of constitutional rights protected by 42 U.S.C. § 1983 (1988). Essentially, the appellees contended that Hullum's investigation continued until after the criminal and civil cases were closed and that the investigation constituted harassment and persecution.

Hullum and DPS jointly moved for summary judgment on the basis of (1) official immunity; (2) sovereign immunity; (3) limitations; and (4) failure to state a cause of action. The trial court initially granted the motion. Later, the trial court granted the appellees' motion for new trial and denied the motion for summary judgment.

## Arguments on Appeal

■ In two points of error, Hullum and DPS contend the trial court erred in denying their motion for summary judgment. The first point of error, devoted to section 1983, states that Hullum is entitled to qualified immunity[2] and that DPS is not a "person" for purposes of section 1983. The second point of error, devoted to the common law claims, states in part that DPS is entitled to sovereign immunity because appellees failed to state a viable cause of action under the Texas Tort Claims Act, that is, the use or misuse of tangible personal property. We lack jurisdiction over these issues because they are not based on official immunity. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5)

(Vernon Supp.1996) (authorizing interlocutory appeals based on official immunity); *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993) (sovereign immunity not based on official immunity cannot be raised in an accelerated appeal); *City of Irving v. Pak,* 885 S.W.2d 189, 191–92 (Tex.App.—Dallas 1994, dism'd w.o.j.) (failure to state a claim under the Texas Tort Claims Act cannot be raised in an accelerated appeal).[3]

We dismiss for lack of jurisdiction the first point of error and that portion of the second point of error regarding sovereign immunity.

## Official Immunity

■ In their second point of error, Hullum and DPS maintain the trial court erred in denying immunity on appellees' common law claims because Hullum is entitled to official immunity. Official immunity is a common-law defense that protects government officers and employees from personal liability. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Government employees are entitled to immunity from suit arising from the performance of (1) discretionary duties (2) within the scope of their authority (3) as long as they act in good faith. *Id.* The parties do not dispute that Hullum acted within his discretion. We therefore address only whether Hullum acted within the scope of his authority and in good faith. *See Antu v. Eddy,* 914 S.W.2d 166, 170 (Tex. App.—San Antonio 1995, no writ).

### 1. Standard of Review

■ In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the nonmovant is taken as true, and every reasonable inference in favor of the

---

1. "To avoid confusion, plaintiffs should ideally include the relevant capacity in the style of their suit." *Morris v. Collins,* 916 S.W.2d 527, 530 n. 2 (Tex.App.—Houston [1st Dist.] 1995, no writ) (O'Connor, J., concurring); *see also First State Bank of Dumas v. Sharp,* 863 S.W.2d 81, 83 (Tex.App.—Austin 1993, no writ). Accordingly, we amend the style of this appeal.

2. Like Hullum and DPS, we use the term "qualified immunity" when referring to the federal defense and "official immunity" when referring to the state defense.

3. Furthermore, Hullum did not move for summary judgment on the basis of qualified immunity to the section 1983 claim.

nonmovant will be resolved in its favor. *Id.* at 548–49. When a defendant moves for summary judgment on an affirmative defense, like official immunity, the defendant must conclusively prove each element of the defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Chambers,* 883 S.W.2d at 653.

**2. Scope of Authority**

■ The summary judgment evidence includes excerpts from Hullum's deposition in which he describes the course of his investigation. The appellees contend that some of these activities were improper. Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned. *See Texas Dept. of Pub. Safety v. Perez,* 905 S.W.2d 695, 700 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Harris County v. Ochoa,* 881 S.W.2d 884, 888 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Koerselman v. Rhynard,* 875 S.W.2d 347, 350 (Tex.App.—Corpus Christi 1994, no writ). Thus, the summary judgment evidence establishes that Hullum acted within the scope of his authority as a DPS investigator.

**b. Good Faith**

■ The appellees agree that Hullum was entitled to initiate an investigation; they contend, however, that Hullum acted in bad act in conducting the investigation. To establish his good faith, Hullum must prove that a reasonably prudent officer, under the same or similar circumstances, might have believed that his actions were justified. *Chambers,* 883 S.W.2d at 656. Hullum's actions include *both* the initial decision to investigate and the manner and duration of the investigation. *See Wadewitz v. Montgomery,* 914 S.W.2d 239, 244–45 (Tex.App.—Waco 1996, writ filed) (requiring officer to reevaluate decision to start high-speed chase as situation develops); *Antu,* 914 S.W.2d at 171–73 (finding official's course of conduct did not involve intertwined events). Whether Hullum is negligent is not dispositive of the good faith element. *Chambers,* 883 S.W.2d at 655; *City of Beverly Hills v. Gue-*

*vara,* 911 S.W.2d 901, 904 (Tex.App.—Waco 1995, no writ).

To controvert summary judgment proof on good faith, the appellees must do more than show that a reasonably prudent officer could have decided to take a different action; the appellees must produce evidence that no reasonable person in Hullum's position could have thought the facts were such that they justified his actions. *Chambers,* 883 S.W.2d at 657. We need not discuss the appellees' proof if Hullum fails to establish his good faith. *See Antu,* 914 S.W.2d at 173.

In their pleadings and summary judgment response, the appellees allege Hullum acted in bad faith in the following respects: (1) he began his investigation before being assigned to the case by his superior; (2) he hid or "lost" important parts of his investigation file; (3) he pressed on with the civil case after the criminal case had been dismissed for want of evidence; (4) he continued to assert publicly that the appellees were guilty of operating an illegal pyramid scheme after all charges had been dismissed; (5) he interfered with WPC's business by telling its customers and distributors that it was an illegal pyramid scheme; (6) he intended to destroy WPC and run Schermerhorn out of town, even though no wrongdoing had been proven; (7) he continued to hold his file open for many months after the conclusion of both the civil and criminal cases in order to prevent discovery of his activities; and, finally, (8) he continued to accuse appellees of illegal activity even after all litigation had concluded.

Hullum and DPS provided the following summary judgment evidence: (1) a letter from the state securities board indicating that WPC may have been selling unregistered securities; (2) a statement from Bruce and Kristy Sommers describing Tanner's efforts to recruit them into WPC; (3) a criminal docket sheet indicating that Tanner had been charged with the offense of "endless chain scheme"; (4) Schermerhorn's arrest warrant for selling unregistered securities; (5) an order dismissing the charges against Schermerhorn; (6) the petition and agreed final judgment in the attorney general's civil suit against WPC; (7) Tanner's voluntary statement to the DPS and excerpts from his

deposition describing the WPC business plan; (8) excerpts from Schermerhorn's deposition describing her arrest and efforts to learn details about the DPS investigation; and (9) excerpts from Hullum's deposition describing his investigation of appellees.

Hullum's evidence showed he received advice about WPC's legality from the local district attorney, the state securities board, and the attorney general's office. This evidence addresses Hullum's initial decision to investigate the appellees, but it fails to address the allegations raised by the appellees' pleadings. Although these elements are not always necessary, the evidence does not include the DPS investigation guidelines nor does Hullum or any other person state that he followed those guidelines. Nor is there any evidence establishing that Hullum conducted his investigation in accordance with the Texas Penal Code of Criminal Procedure. *See City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ) (officer's recitations established good faith). Finally, there is no summary judgment proof that Hullum acted as a reasonable officer would have acted in the same or similar circumstances. *See Dear v. City of Irving,* 902 S.W.2d 731, 738 (Tex.App.—Austin 1995, writ denied). We therefore agree that a material fact issue exists regarding whether Hullum meets the reasonably prudent officer test as stated in *Chambers.*

■ Good faith is established when it is proved that "a reasonably prudent officer, under the same or similar circumstances, could have believed" that his actions were justified. *Chambers,* 883 S.W.2d at 656. The affidavit of *a qualified witness*—usually an expert—who, after reviewing the activities of the official in question, concludes that "a reasonably prudent officer, under the same or similar circumstances, could have believed" that his actions were justified, will suffice. The magic words are not required, but, to sustain a summary judgment, the proof should contain the objective factual conclusion that what the defendant did was justified under the circumstances; *i.e.,* that he acted in good faith. This is so because in the absence of this conclusion in the proof, the question will remain as to whether the

defendant's conduct amounted to good faith. The court cannot draw that conclusion as a matter of law.

■ Once the defendant/movant has met his burden of proof on good faith, the plaintiff/non-movant may attempt to controvert the existence of the defendant's good faith. But to avoid a summary judgment based on official immunity, the plaintiff carries a much higher burden of proof. In order to raise a fact issue, a plaintiff is required to prove that *"no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." Chambers,* 883 S.W.2d at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993)) (underlining added). Again, magic words are not required, but there must be objective proof from *a qualified witness* who, after reviewing the facts, concludes that *no reasonable person* in the defendant's position would have done what the defendant did. Upon this controverting proof, the question of good faith must go to a jury to resolve the fact issue.

Because Officer Hullum in this case failed to offer summary judgment proof of the factual conclusion that he acted in good faith, the question of his good faith remains open for a fact finder to determine.

The trial court did not err in denying Hullum's motion for summary judgment or in denying DPS's derivative claim. We overrule the second point of error, and affirm the trial court's order.