BEXAR COUNTY, Bexar County Sheriff's Civil Service Commission, and Ralph Lopez, Officially and Individually, Appellants,

v.

Angela GIROUX–DANIEL, Appellee.

No. 04–97–00608–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 29, 1997.

Before RICKHOFF, STONE and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

In this appeal, we must determine the proper scope of an interlocutory appeal from the denial of summary judgment based on a claim of qualified immunity. Concluding that we do not have jurisdiction over the issues raised by some of the appellants, we dismiss those parts of the appeal. As to the remaining issues, we affirm the trial court's order denying summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

After working as a jail law librarian for eleven years, Angela Giroux–Daniel (Angela) was fired in 1995. The Bexar County Sheriff's Civil Service Commission upheld the termination. Angela brought this action against Bexar County, the Bexar County Sheriff's Civil Service Commission, and Sheriff Ralph Lopez, in his official and individual capacities, claiming that she was fired in retaliation for reporting misconduct at the sheriff's department. She asserted three causes of action: (1) a claim under 42 U.S.C. § 1983 for violation of the right to free speech guaranteed by the First Amendment; (2) a claim for violation of the right to free speech guaranteed by the state constitution; and (3) a retaliation claim under the state whistleblower act, *see* TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp.1997). The defendants moved for summary judgment based, in part, on a claim of qualified immunity from suit. The trial court denied the motion, and the defendants have appealed.[1]

### JURISDICTION

Generally, we do not have jurisdiction over appeals from interlocutory orders, such as an order denying a motion for summary judgment. *See Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). But the Texas Civil Practice and Remedies Code expressly allows an appeal from an order that "denies a mo-

Lori W. Hanson, Leslie J.A. Sachanowicz, Assistant Criminal District Attorney, San Antonio, for Appellant.

Philip Durst, Wiseman, Durst, Tuddenham & Owen, P.C., Austin, for Appellee.

1. Although the Bexar County Sheriff's Civil Service Commission is listed as an appellant in the notice of appeal, the appellants' briefs do not list the Commission as an appellant and do not seek any relief for the Commission. In any event, as explained below, we have no jurisdiction over the Commission's appeal.

tion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon 1997). We have jurisdiction over this appeal only to the extent it fits within section 51.014(5).

### 1. Jurisdiction Based on an Assertion of Qualified Immunity

The defendants moved for summary judgment on several grounds, including qualified immunity. Qualified immunity is an immunity from suit available to government officials sued in their individual capacities under § 1983. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993).[2] This court has previously indicated that section 51.014(5) does not allow an interlocutory appeal from an order denying a motion for summary judgment based on qualified immunity. *See Texas Dep't of Pub. Safety v. Tanner*, 928 S.W.2d 731 (Tex.App.—San Antonio 1996, no writ). In *Tanner*, the court referred to qualified immunity as a defense to a federal § 1983 action and to official immunity as a state common-law defense protecting government officials from suits arising out of the performance of their discretionary duties in good faith. *See id.* at 734 & n. 2. The defendant government official argued in one point of error that he was entitled to qualified immunity on the plaintiffs' § 1983 claim. The court held that it lacked jurisdiction over that point of error because it was "not based on official immunity."[3] *Id.* at 734. *Tanner* thus indicated that in an appeal under section 51.014(5), we may only consider arguments based on the state common-law defense of official immunity. A recent decision by our supreme court casts doubt on the continued viability of this narrow construction of section 51.014(5). *See Newman v. Obersteller*, No. 96–0374, 1997 WL 195262, —— S.W.2d —— (Tex. April 18, 1997).

In *Newman*, the court considered whether courts of appeals have jurisdiction over denials of summary judgment based on section 101.106 of the Texas Tort Claims Act. Section 101.106 provides that a judgment on a tort claim against a governmental unit bars any action against an employee of the governmental unit involving the same subject matter. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997). The court held that section 101.106 is an immunity statute, even though it does not use the word "immunity." *Newman*, 1997 WL 195262, at *2, —— S.W.2d at ——. Therefore, section 51.014(5) allows an interlocutory appeal from the denial of a summary judgment motion based on section 101.106. *Id. Newman* thus establishes that interlocutory appeals under section 51.014(5) are not limited to assertions of state common-law official immunity. Based on *Newman*'s broadened construction of section 51.014(5), we conclude that we have jurisdiction over appeals from the denial of summary judgment based on qualified immunity. We also note that other courts of appeals have held that section 51.014(5) allows an interlocutory appeal from the denial of a summary judgment motion based on qualified immunity. *See, e.g., City of Harlingen v. Vega*, 951 S.W.2d 25, 26–27 (Tex.App.—Corpus Christi 1997 n.w.h.); *Hudson v. Vasquez*, 941 S.W.2d 334, 337 (Tex.App.—Corpus Christi 1997, n.w.h.); *Spacek v. Charles*, 928 S.W.2d 88, 91 (Tex.App.—Houston [14th Dist.] 1996, writ dism'd w.o.j.). Because the motion for summary judgment asserted that Sheriff Lopez was entitled to qualified immunity, we have jurisdiction over his appeal from the denial of the motion on that ground.

---

**2.** The term "qualified immunity" is sometimes used to describe other types of immunity possessed by government officials. *See City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n. 1 (Tex. 1993). In particular, it has sometimes been used to refer to an affirmative defense available to government officials who have been sued under the Texas Tort Claims Act. *See, e.g., Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied). In this case, however, the motion for summary judgment referred only to the federal defense that applies to § 1983 actions.

**3.** It appears that the court had an additional reason for not reaching the merits of the qualified immunity claim—the government official did not move for summary judgment on the basis of qualified immunity. *Id.* at 734 n. 3.

### 2. Jurisdiction Over the Governmental Entities' Appeals

■ Having concluded that we have jurisdiction over Sheriff Lopez's appeal from the denial of summary judgment, we must next consider whether we have jurisdiction over Bexar County's appeal.

To render Bexar County liable under § 1983, Angela seeks to prove that a Bexar County policymaker, Sheriff Lopez, violated her First Amendment right to free speech. *See Bennett v. Pippin,* 74 F.3d 578, 586 (5th Cir.) (holding that a single decision by a government policymaker is sufficient to establish governmental liability under § 1983), *cert. denied,* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996); *Turner v. Upton County,* 915 F.2d 133, 136 (5th Cir.1990) ("[I]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement."), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Because the County's liability is thus conditioned on Sheriff Lopez's liability, the County argues that if Sheriff Lopez is entitled to summary judgment on the basis of qualified immunity, it is also entitled to summary judgment on the basis of immunity. Accordingly, the County argues that it may appeal the trial court's denial of summary judgment pursuant to section 51.014(5).

The County relies on *City of Beverly Hills v. Guevara,* 904 S.W.2d 655 (Tex.1995), a case involving the Texas Tort Claims Act. In *Guevara,* the Texas Supreme Court held that a local government may appeal under section 51.014(5) " 'based on an assertion of immunity by' " its employee because a local government is not liable under the Tort Claims Act if its employee has official immunity. *See* 904 S.W.2d at 656 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5)); *see also DeWitt v. Harris County,* 904 S.W.2d 650, 653–54 (Tex.1995); *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). *Guevara* does not apply here because it involved immunity

from a suit under the Tort Claims Act, while this case involves immunity from a § 1983 suit. Unlike local governments sued under the Tort Claims Act, a local government sued under § 1983 has no immunity even if its employee is entitled to qualified immunity. *See Leatherman,* 507 U.S. at 166, 113 S.Ct. at 1162 (1993); *Owen v. City of Independence,* 445 U.S. 622, 657, 100 S.Ct. 1398, 1418–19, 63 L.Ed.2d 673 (1980). Accordingly, we have no jurisdiction over Bexar County's appeal because it cannot be based on Sheriff Lopez's assertion of immunity. *See City of Harlingen,* 951 S.W.2d at 27–28. For the same reason, we also have no jurisdiction over the appeal of the Bexar County Sheriff's Civil Service Commission.

■ Similarly, we have no jurisdiction over the appeal of Sheriff Lopez in his official capacity. Suits against a government employee in his or her official capacity are just another way of pleading a suit against the government entity of which the official is an agent. *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 122 (Tex.App.—Houston [1st Dist.] 1995, no writ). Accordingly, qualified immunity is not at issue when a government employee is sued in his or her official capacity. *See Simpson v. Hines,* 903 F.2d 400, 404 (5th Cir.1990).

### 3. Jurisdiction to Consider the Fact-Based Aspects of Immunity

■ Angela argues that we do not have jurisdiction to consider the fact-based aspects of Sheriff Lopez's defense. To evaluate this argument, we must determine the proper scope of a qualified immunity defense.

Government officials have a qualified immunity from § 1983 suits if they can establish that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[4] In federal court, the

---

4. While Sheriff Lopez acknowledges that the *Harlow* standard applies here, he also relies on the *Chambers* standard, which applies to official immunity claims under the Texas Tort Claims Act. *See Lancaster v. Chambers,* 883 S.W.2d 650,

653 (Tex.1994) (holding that government employees are entitled to official immunity from suits arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority).

denial of summary judgment based on qualified immunity is subject to interlocutory appeal "to the extent that it turns on an issue of law." *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The Supreme Court defined the parameters of such an interlocutory appeal in *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In *Johnson,* the plaintiff sued several police officers under § 1983, claiming that they used excessive force by beating him after his arrest. Three of the officers moved for summary judgment on the ground that the plaintiff had produced no evidence that they were involved in the beating. The trial court denied the motion, and the officers attempted to appeal. The Supreme Court held that the officers could not immediately appeal the trial court's "fact-related," "evidence sufficiency" determination, even though the officers were entitled to assert qualified immunity. *See id.* at 304–07, 312–14, 115 S.Ct. at 2153, 2156. Rather, as stated in *Mitchell,* the denial of summary judgment is subject to interlocutory appeal only to the extent the denial turns on a question of law, *i.e.,* whether the constitutional right was clearly established. *See id.* at 312–14, 115 S.Ct. at 2156.

In this case, the § 1983 action is based on Angela's claim that she was fired in retaliation for exercising her First Amendment right to speak out on matters of public concern. She argues that when she was fired in 1995, it was clearly established that firing a government employee for speaking out on matters of public concern constitutes a violation of the employee's First Amendment rights. Sheriff Lopez does not challenge Angela's assertion that a reasonable person would have known that firing a government employee for speaking out on matters of public concern constitutes a violation of her First Amendment rights. Instead, he argues that the summary judgment evidence establishes that he did not approve Angela's termination in retaliation for her exercise of her First Amendment rights. Relying on *John-son,* Angela asserts that this fact-related, evidence sufficiency issue may not properly be considered in this interlocutory appeal.

We conclude that *Johnson* does not apply here because it was based on considerations of federal appellate procedure. *See City of Harlingen,* 951 S.W.2d at 27 n. 2 (rejecting argument that federal law limiting qualified immunity interlocutory appeals to legal questions should apply in state court). While our legislature has enacted a statute expressly providing for an interlocutory appeal from the denial of summary judgment based on immunity, Congress has not enacted a comparable statute applicable in federal court. *See Johnson,* 515 U.S. at 397–10, 115 S.Ct. at 2154–55. Rather, the interlocutory appeal for qualified immunity cases is a judicially created exception to the general rule that appeals are available only from final decisions. Based on principles governing exceptions to the final-decision requirement, as well as considerations of judicial economy, the *Johnson* Court determined that qualified immunity interlocutory appeals should be limited to abstract issues of law. *See id.* 515 U.S. at 312–18, 115 S.Ct. at 2156–58.

Unlike federal appellate courts, we are not at liberty to limit the scope of our jurisdiction based on principles of federal appellate procedure or considerations of judicial economy. Our legislature has expressly provided for an interlocutory appeal from an order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5). Consequently, we have jurisdiction over appeals from the denial of summary judgments in § 1983 cases to the extent the appeals raise qualified immunity issues.

Here, Sheriff Lopez has raised a qualified immunity issue by asserting that he did not approve Angela's termination for retaliatory reasons. In cases such as this one, where the legality of a defendant's actions depends

---

Although the *Chambers* standard is derived from the *Harlow* standard, *see id.* at 656, the *Harlow* standard does not include a good faith element. The *Chambers* standard is inapplicable to an assertion of qualified immunity in a § 1983 action.

*See Hudson v. Vasquez,* 941 S.W.2d 334, 338 (Tex.App.—Corpus Christi 1997, n.w.h.); *Robinett v. Carlisle,* 928 S.W.2d 623, 625 (Tex.App.—Fort Worth 1996, writ denied).

on the defendant's motive or intent, the qualified immunity analysis necessarily encompasses a consideration of the defendant's intent. *See, e.g., O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1367 (7th Cir.1993); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 47 (1st Cir.1988); *see also Tompkins v. Vickers,* 26 F.3d 603, 607 (5th Cir.1994) ("Every circuit that has considered the question has concluded that a public official's motive or intent must be considered *in the qualified immunity analysis* where unlawful motivation or intent is a critical element of the constitutional violation.") (emphasis added); 1 JOSEPH G. COOK & JOHN L. SOBIESKI, JR., CIVIL RIGHTS ACTIONS ¶ 2.06[B], at 2–283 to – 287 & n. 31 (1997) (citing cases). We therefore conclude that we have jurisdiction to consider Sheriff Lopez's argument that he lacked a retaliatory motive for his actions.

## SHERIFF LOPEZ'S ASSERTION OF QUALIFIED IMMUNITY FROM THE § 1983 ACTION

■ Having concluded that we have jurisdiction over Sheriff Lopez's appeal, we must now determine whether the trial court properly denied his motion for summary judgment. Summary judgment is proper when the summary judgment record establishes that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." TEX.R. CIV. P. 166a(c); *see also Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985). In determining whether a material fact issue exists, "we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor." *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). A defendant who moves for summary judgment on the basis of an affirmative defense must expressly present and conclusively prove all essential elements of the defense as a matter of law; there can be no genuine issues of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Qualified immunity is an affirmative defense. *See Spacek,* 928 S.W.2d at 91; *see also Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229, 238 (Tex.App.—Dallas 1995, no writ) (applying state summary judgment standards to a § 1983 qualified immunity claim).

Sheriff Lopez argues that his approval of Angela's termination did not violate a constitutional right of which a reasonable person would have been aware because he did not have a retaliatory motive for approving the termination and he did not know that his subordinates had a retaliatory motive. The summary judgment evidence submitted by Sheriff Lopez shows the following. According to Angela's deposition testimony, she reported several alleged improprieties committed in the sheriff's department, including improprieties by top officials in the Lopez administration. In particular, in 1993, she reported to the district attorney that the jail administrator, Pepe Lucero, turned in work attendance records showing that he reported to work during a period in which he was out of the country on vacation. Angela obtained a post card from Lucero and copies of Lucero's work attendance records reflecting this contradictory information. It is undisputed that when Lucero learned that she had made this report, he called her a thief and told her never to come to his office again. Lucero testified that some time after this dispute between Angela and him, he commenced an internal affairs investigation of Angela based on a prisoner's complaint.

Angela learned that some top officials in the Lopez administration, including Lucero, were using county vehicles to drive to and from bars. She reported this information to several government officials and to the media. A local newspaper ran an article regarding the "cars and bars" issue on February 7, 1995. A few days before that, a television report aired. During the time between the commencement of the internal affairs investigation and the media reports regarding cars and bars, internal affairs determined that the prisoner's complaint was meritless. In the course of the investigation, however, certain employees made negative statements about Angela's ability to work with others. Relying on these statements, Lucero placed her on administrative leave, a precursor to termination, on February 7, 1995, the same day that the newspaper article was published.

After Angela was placed on administrative leave, Lucero resigned as jail administrator. He was replaced by Chauncey Spencer. Before taking over as jail administrator, Spencer was the deputy chief in charge of courthouse security. As such, he was one of the top officials in the Lopez administration and he discussed the cars and bars story with Sheriff Lopez at the time the news reports occurred. Spencer testified that because Sheriff Lopez has the overall responsibility for the jail, he always discusses major actions, such as the termination of an employee, with the Sheriff. He stated that he followed this practice before he terminated Angela, and that the Sheriff approved the termination. Sheriff Lopez, on the other hand, testified that he did not recall anything about Angela's termination, although he knew about the internal affairs investigation. Sheriff Lopez stated that he was contacted by a reporter regarding the "cars and bars" issue shortly before the television report aired and that he discussed the issue with his top officials after the media reports occurred.

Top officials in the Lopez administration testified that they were aware of rumors that Angela had reported alleged improprieties at the sheriff's department to various people. They also testified that Angela was suspected of being the source for the cars and bars story. There was also testimony indicating that Angela's removal from the sheriff's department on the day she was fired was conducted in a heavy-handed way.

While it is true that the summary judgment record contains no direct evidence that Sheriff Lopez had a retaliatory motive for approving Angela's dismissal, direct evidence is not required in these circumstances. *See Tompkins*, 26 F.3d at 608–09; *City of Houston v. Leach*, 819 S.W.2d 185, 193 (Tex.

App.—Houston [14th Dist.] 1991, no writ). It is also true that Sheriff Lopez submitted evidence indicating that Angela had difficulty in getting along with others, did not receive favorable evaluations from her supervisors, and was fired as a result of the negative findings of the internal affairs investigation. For purposes of our review of the denial of summary judgment, this evidence does nothing more than show that a fact issue exists regarding the motivation behind Angela's termination. Construing all reasonable inferences from the evidence in favor of Angela, we conclude that a fact issue exists regarding the motive for the actions taken against her. Therefore, the trial court properly denied Sheriff Lopez's motion for summary judgment on the ground of qualified immunity.[5]

## SHERIFF LOPEZ'S ASSERTION OF QUALIFIED IMMUNITY FROM THE REMAINING CLAIMS

Sheriff Lopez argues on appeal that he is entitled to qualified immunity from Angela's whistleblower claim and state constitutional claim. He notes that the Supreme Court has held that qualified immunity is more than a defense to liability; it is an immunity from suit. *See Mitchell*, 472 U.S. at 525–26, 105 S.Ct. at 2814–16; *Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2737–38. But Sheriff Lopez has cited no authority holding that a person who is entitled to qualified immunity from a § 1983 action is automatically immune from suit on all other causes of action as well. In any event, our conclusion that a fact issue exists regarding retaliatory motive would apply with equal force to Sheriff Lopez's assertion of qualified immunity to the whistleblower claim and the state constitutional claim.[6]

---

**5.** Sheriff Lopez argues on appeal that the summary judgment proof submitted by Angela was insufficient. Because we conclude that the summary judgment proof submitted by Sheriff Lopez, described above, was insufficient to establish his entitlement to the affirmative defense of qualified immunity, we need not consider the sufficiency of Angela's proof. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Citing the heightened pleading standard required by some federal courts in § 1983 cases, Sheriff Lopez also argues that Angela should be required to state specifically how he had direct

knowledge of a retaliatory motive for her firing. The federal heightened pleading standard simply has no application at the summary judgment stage in state court. *See Harrison v. Texas Dep't of Criminal Justice-Institutional*, 915 S.W.2d 882, 887–88 (Tex.App.—Houston [1st Dist.] 1995, no writ).

**6.** Because Sheriff Lopez's motion for summary judgment only referenced federal law, we express no opinion regarding the availability of any state-law immunities to the whistleblower and state constitutional claims. *Cf. Travis v. City of Mes-*

## ANGELA'S REQUEST FOR DELAY DAMAGES

Asserting that this appeal was brought solely for delay, Angela requests this court to award her damages. *See* TEX.R.APP. P. 45. To justify such sanctions, we must determine that the appeal was taken for delay only and without sufficient cause. *Campos v. Investment Management Properties, Inc.*, 917 S.W.2d 351, 356 (Tex.App.—San Antonio 1996, writ denied). We must review the case from the appellants' point of view at the time the appeal was taken and decide whether they had any reasonable grounds to believe the case would be reversed. *Id.* Having reviewed the record and the briefs and having considered the issues created by the intersection of state and federal law in this appeal, we conclude that delay damages should not be awarded.

## CONCLUSION

For the reasons stated above, we dismiss for lack of jurisdiction the appeals of Bexar County, Bexar County Sheriff's Civil Service Commission, and Sheriff Lopez in his official capacity. We affirm the trial court's denial of summary judgment for Sheriff Lopez in his individual capacity on the ground of qualified immunity.

---

*quite,* 830 S.W.2d 94, 99–100 (Tex.1992) (refusing to address appellants' arguments regarding state-law official immunity because appellants did not move for summary judgment on that ground); *Hudson,* 941 S.W.2d at 339 (overruling a point of error regarding § 1983 qualified immunity because "[t]he only discussion of immunity issues in appellant's motion for summary judgment focuse[d] on the state law test").