TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00168-CV






Texas A&M University, Texas A&M University System, Dr. Jerry Gaston,

and Eugene Ray, Appellants


v.


Don Thompson, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. 95-08113, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Texas A&M University, the Texas A&M University System, Dr. Jerry Gaston, and
Eugene Ray appeal from the interlocutory order denying the portion of their motion for summary
judgment asserting that Gaston and Ray were protected by various immunities from Don
Thompson's complaints. We will affirm the order in part, but reverse and render judgment against
Thompson's claims that appellants in their official capacities violated his federal constitutional
rights.


BACKGROUND


 Thompson worked as an assistant power plant superintendent at Texas A&M
University ("TAMU"), a part of the Texas A&M University System ("the System"). Dr. Jerry
Gaston was a vice president for administration at TAMU and Eugene Ray was the deputy director
and interim executive director of TAMU's physical plant department.

 Thompson's complaints arise from the way in which appellants responded to his
reports of problems in the physical plant department's solicitation of bids for an expansion of the
physical plant's cogeneration program ("the Cogen project"). The System eventually approved a
development agreement with Tenneco that included a confidentiality agreement to prevent disclosure
of project documents during negotiations. Thompson and others reported that the System violated
the confidentiality agreement by disclosing some information to a competitor that bid unsuccessfully. 
Thompson and others also reported this disclosure to auditors hired by the System to investigate the
Cogen project. Thompson continued to report this disclosure as a violation of law, and also reported
the failure by others to pass this report along as a separate violation of law. Thompson also reported
that special treatment was given to the competitor, that the competitor's proposal might violate state
law, and that TAMU improperly modified its agreement with Tenneco. (Eventually, the Legislature
waived TAMU's sovereign immunity, Tenneco sued, and TAMU paid Tenneco $27 million.)

 On January 13, 1995, Gaston and Ray asked for Thompson's resignation. When he
declined, Gaston told Thompson he was suspended based on a state management audit report that
found poor management had caused morale problems in the physical plant department. Ray reported
that he received many complaints about Thompson and his supervisor's handling of administrative
duties, and that Thompson had ignored Ray's direct order to stop work on a chilled water pumping
project. Thompson was placed on administrative leave pending further investigation by an ad hoc
committee. Thompson said he was surprised because he had previously received only good
performance reviews and had not received any warning or counseling regarding his performance. 
Gaston ordered Thompson escorted from the premises in plain view of the remaining staff. 
Thompson's belongings were placed in a box in the hallway outside his office and left there for
about a month before being inventoried. A banner proclaiming "Under New Management" was hung
on the physical plant building.

 On February 21, 1995, Gaston told Thompson that the committee recommended firing
him. Thompson was not allowed to address the committee, but was permitted to file a written
response. His employment was terminated on March 31, 1995 for his failure to follow TAMU
policies and his lack of people skills.

 Thompson requested an arbitration pursuant to TAMU policy. Several arbitrations
were set and postponed, but the final attempt was cancelled at Gaston's direction and not
rescheduled despite Thompson's requests.

 Thompson sued for violations of his constitutional and statutory rights by Gaston,
Ray, TAMU, and the System. In his fifth amended original petition, he complains that Gaston and
Ray individually and conspiratorially violated his rights under the First, Fourth, Fifth, and Fourteenth
Amendments to the federal constitution. He complains that they intentionally inflicted emotional
distress on him. He further complains that TAMU and the System violated his rights under the state
and federal constitutions and violated the Whistleblower Act.

 Appellants moved for summary judgment, contending that various forms of immunity
protected them from all of Thompson's claims. They also raised other grounds for summary
judgment and reject Thompson's version of events. The district court denied their motion without
stating a basis.


DISCUSSION


 Appellants raise a single issue on appeal, contending that the district court erred by
denying their motion for summary judgment based on their assertions of immunity. Appellants
assert the protection of sovereign immunity, qualified immunity, and quasi-judicial or official
immunity against Thompson's numerous claims. Appellants claim sovereign immunity regarding
federal- and state-law claims made against Gaston and Ray in their official capacities. Regarding
claims made against Ray and Gaston in their individual capacities, appellants assert they are
protected by qualified immunity from federal claims and official immunity from state claims.

 These immunities involve both immunity from suit and immunity from liability. See
Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002). Immunity from suit bars
a suit against the State--depriving a trial court of subject matter jurisdiction even if liability is
undisputed--unless the state expressly gives consent to the suit. Id. Immunity from liability protects
the State from judgments, even where the Legislature expressly consents to permit a suit. Id. 
Immunity from liability also persists unless it is waived. General Serv's Comm'n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001).

 We review the denial of a motion for summary judgment under the same standard of
review that governs the granting of a summary judgment. See San Antonio Express News v. Dracos,
922 S.W.2d 242, 247 (Tex. App.--San Antonio 1996, no writ). Summary judgment is appropriate
only if the record establishes that there is no genuine issue of material fact, and that the movant is
entitled to judgment as a matter of law on a ground set forth in the motion. See Tex. R. Civ. P.
166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). A defendant who conclusively establishes all elements of an
affirmative defense is entitled to summary judgment. Cathey, 900 S.W.2d at 341.

 Thompson alleges five causes of action. Three are expressly against Gaston and Ray
individually; by two claims, he alleges they violated his federal constitutional rights and, by the third,
he contends that they intentionally inflicted emotional distress upon him. The remaining two claims
are expressly against TAMU and the System for violations of his federal and state constitutional
rights and the Texas Whistleblower Act. Because Thompson alleges that these violations occurred
at least in part through actions of Gaston and Ray, we will examine the application of sovereign
immunity to these claims as they can be construed against Gaston and Ray in their official capacities.


Official capacity

 A suit against state employees in their official capacities is equivalent to a suit against
the State; accordingly, employees acting in their official capacities share the State's sovereign
immunity. See Kentucky v. Graham, 473 U.S. 159, 167 (1985); Texas Dep't of Health v. Rocha, 102
S.W.3d 348, 353 (Tex. App.--Corpus Christi, 2003, no pet.). The Texas Supreme Court has long
recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies, and its
officials from lawsuits for damages, absent legislative consent to sue the State. Federal Sign v.
Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity protects universities. 
Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694, n.3 (Tex. 2003). Sovereign immunity
does not, however, bar plaintiffs from seeking equitable relief from violations of law or
determination of rights under the law. Federal Sign, 951 S.W.2d at 404.

 There is no dispute on appeal that Gaston and Ray are entitled by their employment
to claim sovereign immunity concerning claims made against them in their official capacities.


Federal claims

 Thompson claims that appellants, acting separately and in conspiracy, violated several
of his rights under the federal constitution. Suits for violations of the federal constitutional
provisions are statutorily authorized. See 42 U.S.C.A. §§ 1983, 1985 (West 2003). Section 1983
confers a private right of action against a person who deprives another of federal constitutional
rights. (1) See Burnett v. Grattan, 468 U.S. 42, 44 n.3 (1984). Similarly, section 1985(3) creates a
private right of action for damages for injury or deprivation caused by two or more persons
conspiring to deprive another person or class of persons of constitutional rights. See id. n.4. 

 Appellants contend that the Eleventh Amendment of the United States Constitution
bars a suit against Gaston and Ray in their official capacities in state district court. See U.S. Const.
amend XI. That amendment provides that "[t]he Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Id. Because
the Eleventh Amendment expressly restrains only "[t]he Judicial power of the United States,"
however, this state-court suit presents no Eleventh Amendment question. See id. (emphasis added);
see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 63-64 (1989); Maine v. Thiboutot, 448
U.S. 1, 9 n.7 (1980). 

 Appellants alternatively contend that federal claims cannot lie against Gaston and Ray
in their official capacities because the State is not a person under sections 1983 and 1985. See Will,
491 U.S. at 71. Although the non-person status of the states might not seem to relate to immunity,
the following excerpt from the Supreme Court's analysis makes plain the connection:


Given that a principal purpose behind the enactment of § 1983 was to provide a
federal forum for civil rights claims, and that Congress did not provide such a federal
forum for civil rights claims against States, we cannot accept petitioner's argument
that Congress intended nevertheless to create a cause of action against States to be
brought in state courts, which are precisely the courts Congress sought to allow civil
rights claimants to avoid through § 1983.



Id. at 66-67. In other words, Congress did not by enacting section 1983 waive the states' sovereign
immunity in state courts.

 Finding no waiver of the State's immunity or other authorization of a suit for damages
against the State for violations of the federal constitution, we conclude that the district court erred
by denying the motion for summary judgment against Thompson's claims for damages based on
violations of his federal constitutional rights by Ray and Gaston acting in their official capacities. 
As set out above, because immunity does not bar suits for equitable relief from constitutional
violations, the district court correctly denied summary judgment against Thompson's claims for
equitable relief. See Federal Sign, 951 S.W.2d at 404.

State claims

 Appellants contend that, because sovereign immunity shields them from liability in
their official capacities, the district court erred by denying their motion for summary judgment
against all state-law claims made against them in their official capacities.

 We conclude that the district court did not err by denying summary judgment against
the state-law claims made against Gaston and Ray in their official capacities. Thompson's fourth
claim is not barred by sovereign immunity because he thereby requests equitable relief based on the
violations of constitutional rights by a state official. See Federal Sign, 951 S.W.2d at 404. The fifth
claim--violation of the Whistleblower Act--is within the scope of a statutory waiver of sovereign
immunity that expressly permits public employees who are discharged in violation of that act to sue
for damages. See Tex. Gov't Code Ann. § 554.003(a) (West Supp. 2003); Texas Dep't of Human
Servs. v. Green, 855 S.W.2d 136, 143 (Tex. App.--Austin 1993, pet. denied). The remainder of the
claims are either based on federal law or made against Gaston and Ray in their individual capacities;
they are accordingly discussed elsewhere. We affirm the denial of the motion for summary judgment
regarding Thompson's fourth and fifth claims made against Gaston and Ray in their official
capacities.


Individual capacity

 Claims against government employees in their individual capacities are distinct from
claims against them in their official capacity. Vela v. Rocha, 52 S.W.3d 398, 403 (Tex.
App.--Corpus Christi 2001, pet. denied). Some courts insist on distinguishing immunity from state-law claims (quasi-judicial or official immunity) and immunity from federal section 1983 claims
(qualified immunity), although others find the terms interchangeable. Compare Haynes v. City of
Beaumont, 35 S.W.3d 166, 175 (Tex. App.--Texarkana 2000, no pet.) (distinguishing nomenclature
on federal and state claims) with City of Houston v. Kilburn, 849 S.W.2d 810, 812 n.1 (Tex. 1993)
(qualified, official, discretionary, good-faith, and quasi-judicial immunities interchangeable).

 Thompson alleges that Gaston and Ray violated several constitutional rights, that they
conspired to do so, and that they intentionally inflicted emotional distress upon him. Appellants
assert that they are entitled to quasi-judicial or official immunity from all state law claims brought
against them in their individual capacities. Appellants also assert that they are entitled to qualified
immunity from the claims that they violated and conspired to violate Thompson's federal
constitutional rights.


State claims

 Thompson's only state-law claim against Gaston and Ray in their individual
capacities is that they intentionally inflicted emotional distress. (2)

 Unlike sovereign immunity, the doctrine of official immunity is not a bar to suit (a
jurisdictional issue) but is a bar to liability and shields the party claiming official immunity from
liability in the suit individually. McCartney v. May, 50 S.W.3d 599, 605 (Tex. App.--Amarillo
2001, no pet.). Official immunity is an affirmative defense which protects government employees
who act in good faith from liability, in their individual capacities, related to the performance of
discretionary duties within the scope of the employee's authority. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994). Because official immunity is an affirmative defense and this is
a summary-judgment case, the defendants must conclusively establish all elements of the defense. 
See id.; Vela, 52 S.W.3d at 404. 

 Appellants moved for summary judgment contending that appellants acted within
their discretion, within the scope of their authority, and in good faith. Thompson responded that
appellants lacked the discretion and authority to create a committee to investigate him and to cancel
the arbitration hearing. He complains on appeal that appellants did not act within the scope of their
authority or in good faith when they suspended him on the basis of rumors and anonymous tips, did
not allow him to appear before an investigating committee, denied him the right to an impartial
tribunal, canceled the arbitration, escorted him off campus publicly, issued a press release that
stigmatized him, denied him any hearing, and terminated him while promoting others who performed
their jobs badly.

 We use a standard of objective reasonableness to measure good faith, without regard
to the official's subjective state of mind. Scott v. Britton, 16 S.W.3d 173, 179 (Tex. App.--Houston
[1st Dist.] 2000, no pet.). To be entitled to summary judgment, an official must prove that a
reasonably prudent official might have believed that the action taken was appropriate. See id. The
official need not prove that it would have been unreasonable to take different action, nor that all
reasonably prudent officials would have acted as he did. Id. To controvert the official's summary-judgment proof on good faith, the plaintiff must show that no reasonable person in the defendant's
position could have thought the facts were such that they justified defendant's acts. See Chambers,
883 S.W.2d at 657. The Chambers test balances two competing interests: the "need" aspect
concerns the urgency and circumstances surrounding the employee's action; the "risk" aspect refers
to the likelihood that the employee's act will cause serious harm. Chambers, 883 S.W.2d at 656-57. 
This test applies to cases other than police chases. See Cobb v. Texas Dep't of Crim. Justice, 965
S.W.2d 59, 64 (Tex. App.--Houston [1st Dist.] 1998, no pet.) (fixing floor).

 Appellants asserted at trial that "[n]one of the Defendants' actions are such that no
reasonable official would have acted in the manner alleged." By affidavit, Ray and Gaston assert
that Thompson was fired for failing to stop working on a project as ordered and failing to work well
with others. The affiants describe management problems in the plant. They also assert that they
learned of Thompson's view that he was being fired in retaliation for his reports about the
cogeneration bidding only in his response to the committee's recommendation that Thompson be
fired. Gaston and Ray both assert that they acted within their authority and with good faith toward
Thompson.

 Neither affiant explains, however, why a reasonable official would think it
appropriate, for example, to remove Thompson using guards, create a committee to investigate his
employment but restrict his participation before that committee to responding to its report, and
cancel an arbitration required by TAMU policy requested repeatedly by Thompson, but not cancel
the arbitrations of other employees. There is no showing of urgency in his removal, of danger in his
participation in the committee hearing before his termination, or of any reason to cancel the
arbitration process. These actions call into question whether appellees acted in good faith toward
Thompson. Although further proceedings may show these actions to be appropriate, we conclude
that the record before us does not show that a reasonable official could find these actions appropriate. 

 Because we conclude that appellants did not establish every element of their defense,
the district court properly overruled the motion for summary judgment.


Federal claims

 The elements of a qualified immunity defense against section 1983 claims are
essentially the same as the elements of an official immunity defense under Texas law. See
McCartney v. May, 50 S.W.3d 599, 613 (Tex. App.--Amarillo 2001, no pet.). Section 1983
provides that every person who, under color of law, subjects any citizen to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party
injured. 42 U.S.C.A. § 1983 (West 2003). The Due Process Clause of the Fourteenth Amendment
to the United States Constitution provides that no State shall deprive any person of life, liberty, or
property, without due process of law. U.S. Const. amend XIV. Government officials performing
discretionary functions generally are shielded from liability for civil damages if their conduct does
not violate clearly established statutory or constitutional rights of which a reasonable person would
have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Dallas Indep. Sch. Dist. v.
Finlan, 27 S.W.3d 220, 242 (Tex. App.--Dallas 2000, pet. denied).

 When a defendant pleads qualified immunity to a section 1983 claim and shows he
is a government official whose position involves the exercise of discretion, the plaintiff then has the
burden to rebut the defense. Carrera v. Yepez, 6 S.W.3d 654, 661 (Tex. App.--El Paso 1999, pet.
dism'd w.o.j.) (citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir.1992)). The plaintiff must
show that (1) the official's conduct violated a federally guaranteed right, (2) the right was clearly
established, and (3) the official's conduct was objectively unreasonable in light of the clearly
established right. Carrera, 6 S.W.3d at 661 (citing Salas, 980 F.2d at 306). If the conduct
complained of did not violate clearly established law, summary judgment is proper without an
inquiry into reasonableness because an official could not reasonably be expected to know that the
law forbade his conduct. See Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Finlan, 27
S.W.3d at 243. If the conduct complained of did violate clearly established law, the court must then
determine whether the defendant's conduct was objectively reasonable. Finlan, 27 S.W.3d at 243. 
While the alleged wrong need not have been previously held unlawful, the unlawfulness must be
apparent in light of pre-existing law in order to subject the official to liability. Id.; Brawner v. City
of Richardson, 855 F.2d 187, 192 (5th Cir.1988). As a result, qualified immunity is a powerful
shield that will protect "all but the plainly incompetent or those who knowingly violate the law." 
Malley v. Briggs, 475 U.S. 335, 341 (1986).

 Thompson alleges that Gaston and Ray violated his rights under the First, Fourth,
Fifth, and Fourteenth Amendments. He complains of violations such as firing him for speaking on
matters of public concern, unreasonably searching and seizing his property, denying him the process
due and guaranteed in the termination of his employment, denying him process given to other fired
employees, and damaging his professional reputation without giving him the opportunity to clear his
name. He also alleges that they conspired to violate these rights. Appellants moved for summary
judgment on grounds that Gaston and Ray were entitled to qualified immunity from such claims
brought against them in their individual capacities. 

 Thompson does not dispute that Gaston and Ray were in positions requiring
discretion. He disputes that they carried their burden on the remaining elements of the defense. 
Thompson complains that appellants violated his property interest in his continued employment, his
liberty interest in his reputation, his right to speak freely, and his right to privacy.

 Property interest. Thompson asserts that the System created a property interest
through its employment policies 2.3.3 and 2.3.4. A protected property interest in employment,
process, or benefit exists only when an employee has a legitimate claim of entitlement to--not just
an abstract need, desire, or unilateral expectation of--the employment, process, or benefit. See
Board of Regents v. Roth, 408 U.S. 564, 577 (1972). The presumption that employment in Texas
is at will is difficult to overcome. See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501,
502 (Tex.1998). An employment manual alters the at-will status only if it contains language that
specifically and expressly limits the employment relationship and curtails the employer's right to
terminate the employee. Texas State Employees Union v. Texas Workforce Comm'n, 16 S.W.3d 61,
66 (Tex. App.--Austin 2000, no pet.). Thompson contends that the policy 2.3.3 alters the at-will
relationship by requiring "adequate cause" for dismissal of nonfaculty employees at TAMU, and that
2.3.4 creates a right for employees terminated for cause to have an arbitrator review his complaint
regarding their discharge. Thompson produced more than conclusory evidence that he had a right
that appellants violated.

 Both the idea that a manual can create property interests and the evidence that the
TAMU manual created such a property interest show that Thompson's claimed right was well-established. Appellants do not challenge Thompson's claim that they denied him the arbitration
promised by TAMU policy and requested by Thompson. There is no evidence that the denial of this
clearly established right was objectively reasonable. There is at least a fact question regarding the
objective reasonableness of the denial of this right. We conclude that the district court did not err
by denying appellants' motion for summary judgment on this issue. 

 Liberty interest. To show deprivation of a constitutional liberty interest, Thompson
must show that he was discharged without meaningful process, that he requested and was denied a
chance to clear his name, and that false, defamatory charges were made public in connection with
the discharge. See Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989). Public officials
do not act improperly in publicly disclosing charges against discharged employees, but they must
thereafter afford procedural due process to the person charged. In re Selcraig, 705 F.2d 789, 798
(5th Cir.1983). Moreover, the process due such an individual is merely a hearing providing a public
forum or opportunity to clear one's name, not actual review of the decision to discharge the
employee. Roth, 408 U.S. at 573 n.12. If a government employer discharges an individual under
circumstances that will do special harm to the individual's reputation and fails to give that individual
an opportunity to clear his name, however, the individual may recover monetary damages under
section 1983 for the deprivation of his liberty under the Fourteenth Amendment. Rosenstein, 876
F.2d at 395-96. The employee must prove the following: that he was discharged, that defamatory
charges were made against him in connection with the discharge, that the charges were false, that
no meaningful public hearing was conducted pre-discharge, that the charges were made public, that
he requested a hearing in which to clear his name, and that the request was denied. Id. at 395-96.

 Thompson asserts that appellants violated his liberty interest in his reputation by their
conduct surrounding his suspension and dismissal and by failing to offer a forum in which he could
clear his name. He complains that they announced his suspension in a press release that alleged a
$300,000 cost overrun, that they had him escorted from the building by security in full view of those
nearby, that they posted a sign in full view of the campus that the plant was "under new management.
Thompson concedes that a committee was appointed to review his suspension, but complains that
he was prohibited from contacting the committee, submitting evidence to the committee before it
made its decision, being present when the committee interviewed witnesses in unsworn testimony,
testifying before the committee, or participating in other ways. As discussed above, he was also
denied the post-termination arbitration TAMU policy promised him. We find no evidence of any
other name-clearing hearing.

 There is ample evidence that the liberty interest was well-established, and there is no
evidence to suggest that appellants were objectively reasonable to deny Thompson's name-clearing
hearing. There is at least a fact question regarding the objective reasonableness of the denial of the
right. The district court did not err by denying appellants' motion for summary judgment on this
issue.

 Other rights. Thompson complains about violations of his right to free speech, to
privacy, and to equal protection. He contends that appellants violated his right to free speech by
firing him for speaking out on matters of public concern. He contends that appellants violated his
right to privacy by unreasonably searching and confiscating his property; some of his property either
vanished or was damaged, and the remainder was left unattended and univentoried in a box outside
his former office for a month after his termination. He contends that appellants violated his right to
equal protection by terminating him for reasons that did not result in termination of others and by
denying him the arbitration that was provided to others.

 The rights allegedly violated are well established. While there is some evidence
indicating that appellants had objectively reasonable bases for firing him, searching and seizing his
belongings, or treating him differently from others, the record contains other evidence indicating that
these actions were taken for retaliatory reasons that are not objectively reasonable; thus, a fact
question existsthat makes the denial of summary judgment appropriate. See Yepez, 6 S.W.3d at 654;
see also Bexar County v. Giroux-Daniel, 956 S.W.2d 692, 698 (Tex. App.--San Antonio 1997, no
pet.). The district court did not err by denying the motion for summary judgment.

 Our decisions are based on the record before us in this interlocutory appeal of the
denial of a motion for summary judgment based on assertions of immunity. Further proceedings up
to and including trial may produce additional evidence that dictates a different ultimate conclusion.


CONCLUSION


 We conclude that appellants have sovereign immunity from Thompson's claims for
damages based on violations of his federal constitutional rights by Ray and Gaston acting in their
official capacities. We reverse the denial of the motion for summary judgment regarding these
claims, and render judgment that Thompson take nothing by them.

 We conclude that the district court properly determined that appellants were not
entitled to summary judgment based on their remaining assertions of immunity. We affirm the
remainder of the order denying appellants' motion for summary judgment.

 The cause shall proceed on these remaining claims.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: December 18, 2003

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C.A. § 1983
(West 2003).
2. To recover damages for intentional infliction of emotional distress, a plaintiff must prove
that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous;
(3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting
emotional distress was severe. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999).