Geneva **SMITH**, Appellant,

v.

**TARRANT COUNTY, Texas, and Dannie Cauble, Appellees.**

No. 2–96–207–CV.

Court of Appeals of Texas, Fort Worth.

May 8, 1997.

---

James M. Stanley, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, and Ann Diamond (on appeal), Assistant, Fort Worth, for appellee.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION ON REHEARING

CAYCE, Justice.

Our opinion and judgment of March 20, 1997 are withdrawn and the following is substituted therefor.

Geneva Smith filed suit against Tarrant County, Texas and Dannie Cauble, a Lieutenant Deputy with the Tarrant County Sheriff's Department, under the Texas Tort Claims Act alleging that her injuries were proximately caused by the condition or misuse of a flashlight and other equipment by Deputy Cauble, which resulted in Deputy Cauble's failure to discover an intruder who raped her after he conducted a search of her house. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986) (sovereign immunity is waived for personal injury caused by "condition or use" of tangible personal property). The County and Deputy Cauble filed a joint motion for summary judgment asserting sovereign and official immunity defenses. The trial court granted the motion and rendered a take-nothing judgment against Ms. Smith.

Ms. Smith attacks the summary judgment in five points of error. She contends that the County's sovereign immunity has been waived because her claims are based upon the condition and use of tangible personal

property under section 101.021(2) of the Tort Claims Act. She further argues that Deputy Cauble is not entitled to official immunity because he was not performing a discretionary function in good faith when searching Ms. Smith's house.

We affirm the summary judgment in favor of the County because we hold that Ms. Smith's claims are not actionable under section 101.021(2) of the Tort Claims Act. However, because we find that Ms. Smith sustained her burden of establishing that a material fact issue exists on the question of whether Deputy Cauble acted in good faith, we reverse the summary judgment in favor of Deputy Cauble and remand the case for trial.

## BACKGROUND FACTS

At approximately 2:30 a.m. on the morning of July 5, 1992, Ms. Smith, a sixty-two-year-old woman who lived alone, was awakened from her sleep by a loud noise. She grabbed a shotgun that she kept in the house for protection and walked out of her bedroom to investigate. In the ceiling of her dining room, Ms. Smith found a large hole that reached through to the attic. Sheetrock and debris were scattered on the floor under the hole. She also noticed a mysterious light shining through the hole in the ceiling.

After discovering the hole in her dining room ceiling, Ms. Smith called a neighbor, Dorothy Lange, and asked her to call the police. A few minutes later, Ms. Smith received a call from the Sheriff's Department, who told her that they would send an officer to her house as soon as possible. In the meantime, Jerry and Lisa Ayers, who were also neighbors of Ms. Smith, drove to Ms. Smith's house at the request of Ms. Lange. As Mr. Ayers was inspecting the outside of the house with a flashlight, he discovered that the burglar bars had been pried away from one of the windows. He then fired Ms. Smith's shotgun into the air in an attempt to frighten any possible intruder away.

Deputy Cauble arrived at Ms. Smith's home at approximately 3:21 a.m. and began to search the outside of the house with a high-power police issue flashlight. The flashlight's battery died, however, and Depu-

ty Cauble was required to finish his search with the Ayerses' smaller and less powerful flashlight.

Deputy Cauble continued his search inside Ms. Smith's house. He first inspected the attic by shining the Ayerses' flashlight into the hole in the dining room ceiling. While Deputy Cauble was inspecting the attic, Ms. Smith showed him an electrical cord she had never seen before. The cord dropped from the hole in the ceiling and was plugged into an electrical outlet in Ms. Smith's kitchen. Her freezer had been plugged into this outlet, but someone had unplugged the freezer. Deputy Cauble then conducted a search of other rooms in the house. However, it is disputed whether Deputy Cauble actually searched Ms. Smith's bedroom, where the intruder was allegedly hiding.

Deputy Cauble finished his search at approximately 3:41 a.m., and told Ms. Smith there was no intruder in her house. After Deputy Cauble left, Mr. Ayers conducted a second search of the attic with his flashlight and saw no one. The Ayerses then returned home, leaving Ms. Smith alone.

Around 4:00 a.m., Ms. Smith became frightened and decided to leave the house. She was walking down the hall to her bedroom when a man suddenly jumped out of the room and put her in a chokehold. He then took Ms. Smith to her bedroom where he wrapped a sheet around her head and sexually assaulted her. After about forty minutes, the man tied Ms. Smith's hands and feet with coat hangers and left the house.

In her suit, Ms. Smith alleged that Deputy Cauble was grossly negligent in conducting the search of her house. In attempting to state a claim for liability under section 101.021(2) of the Tort Claims Act, Ms. Smith alleged that Deputy Cauble misused the flashlights in searching the house; misused his pistol by failing to draw it while searching the house; misused his police phone and radio equipment by failing to call for backup officers; and misused his badge by failing to assert his authority over the suspected intruder while in the house. Ms. Smith also claimed that her injuries were caused by the allegedly defective condition of Deputy Cau-

ble's flashlight and the alleged inadequacy of the Ayerses' flashlight.

The County and Deputy Cauble filed a motion for summary judgment asserting sovereign and official immunity, as well as exemption from Tort Claims Act liability under section 101.055(3) on the ground that Deputy Cauble's actions constituted an alleged failure to provide police protection. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(3) (Vernon Supp.1997) (Act does not apply to a claim arising from "the failure to provide or the method of providing police or fire protection"). The motion was denied, but a second motion was subsequently granted. The trial court's judgment does not state the specific ground on which it was granted.

### STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

When the trial court does not state the specific grounds on which the summary judgment was granted, the reviewing court must consider whether any theories set forth in the motion will support a summary judgment. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Bennett v. Tarrant County Water Control & Improvement Dist. No. One,* 894 S.W.2d 441, 446 (Tex.App.—Fort Worth 1995, writ denied). Summary judgment may be affirmed if any of the theories advanced are meritorious. *State Farm,* 858 S.W.2d at 380; *Bennett,* 894 S.W.2d at 446.

### WAIVER OF IMMUNITY UNDER SECTION 101.021(2) OF THE TEXAS TORT CLAIMS ACT

In her second point of error, Ms. Smith contends that a material issue of fact exists on the question of whether the County is liable under section 101.021(2) of the Texas Tort Claims Act, because her injuries were caused by the condition or use of the Ayerses' flashlight and Deputy Cauble's flashlight, gun, badge, phone, and radio.

 Under the doctrine of sovereign immunity, the State or a governmental entity of the State is not liable for the negligence of its officers or employees absent constitutional or statutory provision waiving immunity from liability. *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). The legislature enacted the Tort Claims Act in 1969 to set forth a limited waiver of sovereign immunity. *University of Texas Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994). The Act provides for the following waiver of immunity:

A governmental unit in this state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) *personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.*

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (emphasis supplied).

 To state an actionable claim under section 101.021(2) based upon the "condition" of tangible personal property, it is sufficient to allege that defective property contributed to the injury. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983). To state a claim under the Act based upon the use or misuse of nondefective tangible personal property, a plaintiff must allege (1) that the property was used or misused by a governmental employee acting within the scope of his or her employment and (2) that the use or misuse of the property was a contributing factor to the injury. *Id.* at 32. The negligence of the government employee must be the proximate cause of the injury and must involve a condition or use of tangible personal property under circumstances where there would be private liability. *Id.; see York,* 871 S.W.2d at 178 n. 5. The property itself need not be the instrumentality of the alleged harm, but it must have been a contributing factor to the harm. *See Salcedo,* 659 S.W.2d at 32. The Act does not provide for liability based upon a nonuse of property. *Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994).

 It is undisputed in this case that the two flashlights, the badge, the gun, the police phone, and the radio are tangible personal property. It is further undisputed that Deputy Cauble was acting within the scope of his employment when he searched Ms. Smith's home. However, Ms. Smith's injuries were proximately caused by the sexual assault, not the condition or use of the property in question. While the actions and omissions of Deputy Cauble may constitute negligence, we fail to see how the alleged condition or use of the flashlights, badge, gun, phone, or radio in any way contributed to the sexual assault. We do not believe the legislature intended that immunity be waived where tangible property was merely used, but did not contribute to or cause the alleged injury.

Even assuming the condition or use of the property in question constituted a contributing factor to the sexual assault, we do not believe the circumstances of this case would support a finding of liability against a private person. We have found no support in Texas law for imposing a duty of care on a private person to conduct a search of a neighbor's house, which, if inadequately performed by reason of the condition or use of tangible personal property, would support liability for injuries caused to the neighbor as a result of the criminal conduct of an undiscovered intruder. Since no private person could be liable for negligence under Texas law for conducting such a search, the County cannot be held liable under section 101.021(2) of the Act, as a matter of law. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2).

We hold that, under the circumstances of this case, the alleged condition or use of the tangible personal property in question does not support a claim of liability against the County under section 101.021(2) of the Tort Claims Act. We further hold that Deputy Cauble's alleged failure to use his badge, gun, phone, and radio do not trigger the liability provisions of the Act, as a matter of law. *See Kassen,* 887 S.W.2d at 14. Therefore, the trial court did not err in granting summary judgment for the County on the ground that section 101.021(2) of the Tort Claims Act does not apply. Point of error two is overruled.

## OFFICIAL IMMUNITY

In her third point of error, Ms. Smith contends that the trial court erred in granting summary judgment for Deputy Cauble on the ground of official immunity because there is a material issue of fact on the question of whether Deputy Cauble was performing a discretionary function in good faith.

 Official immunity is a common-law defense that protects government officers

and employees from personal liability in performing discretionary duties in good faith within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex.1994); *Putthoff v. Ancrum,* 934 S.W.2d 164, 168 (Tex.App.—Fort Worth 1996, writ denied). The purpose of the doctrine of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable. *City of Lancaster,* 883 S.W.2d at 653–54. Official immunity is an affirmative defense. *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Thus, the burden is on the defendant to establish all elements of the defense. *Montgomery,* 669 S.W.2d at 310–11. Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster,* 883 S.W.2d at 653.

The parties do not dispute that Deputy Cauble was acting within the scope of his authority as a peace officer when he searched Ms. Smith's house. Therefore, we need only address the question of whether Deputy Cauble was performing a discretionary function in good faith when he conducted the search of the house.

### A. Discretionary Function

Ordinarily, official immunity extends to any action or decision by a government employee that is discretionary. *Kassen,* 887 S.W.2d at 9. Discretionary decisions receive protection but ministerial duties do not. *Id.* In *City of Lancaster,* the Supreme Court of Texas distinguished between discretionary and ministerial acts as follows:

> If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

*City of Lancaster,* 883 S.W.2d at 654. Thus, ministerial acts are those:

> [w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Rains v. Simpson,* 50 Tex. 495, 501 (1878) (quoting *Commissioner of the General Land Office v. Smith,* 5 Tex. 471, 479 (1849)); *see City of Lancaster,* 883 S.W.2d at 654.

Texas courts have consistently held that a peace officer's actions in investigating a possible crime are discretionary. *See City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ) ("A police officer must exercise discretion in determining how to investigate, and to what extent to investigate before seeking a warrant."); *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 876 (Tex.App.—Texarkana 1994, no writ) (peace officer's investigation of criminal activity was discretionary act involving personal deliberation, decision, and judgment); *Wyse v. Department of Public Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.) (describing investigatory duties of peace officers as discretionary). Applying the rationale and holdings of these cases to the facts before us, we hold that Deputy Cauble's actions in investigating a suspected illegal entry into Ms. Smith's house were discretionary.[1]

### B. Good Faith

In *City of Lancaster,* the supreme court adopted a good faith test for official immunity consisting of "objective legal reasonableness." 883 S.W.2d at 656. This standard applies in all qualified or official immunity cases. *Putthoff,* 934 S.W.2d at

---

1. In her response to the motion for summary judgment, Ms. Smith submitted a copy of a page from a manual entitled "Texas Basic Peace Officer Course" containing a list of procedures to be used when there has been a suspected illegal entry of a building. Ms. Smith contends that Deputy Cauble was required to use the procedures outlined in the peace officer's course in his search of Ms. Smith's home; therefore, Deputy Cauble's actions in searching the home were ministerial, not discretionary. However, we find that the course material is merely instructional; it is not a directive or order of the Tarrant County Sheriff's Department that prevented Deputy Cauble from exercising his discretion during the search of Ms. Smith's house.

172; *Murillo v. Garza*, 881 S.W.2d 199, 202 (Tex.App.—San Antonio 1994, no writ). The element of good faith is satisfied when it is shown that a reasonably prudent person in the same or similar circumstances would have taken the same actions. *Putthoff*, 934 S.W.2d at 172; *City of Houston v. Newsom*, 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ). To controvert summary judgment proof on good faith, the plaintiff must do more than show a reasonably prudent person would not have taken the same action; "the plaintiff must show that '*no* reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *City of Lancaster*, 883 S.W.2d at 657 (emphasis supplied). Upon this controverting proof, the question of good faith must go to a jury to resolve the fact issue. *Texas Dep't of Public Safety v. Tanner*, 928 S.W.2d 731, 736 (Tex.App.—San Antonio 1996, no writ).

■■■ In the instant case, Deputy Cauble submitted the affidavit of Captain Pat Byrnes, a twenty-five-year veteran of the Tarrant County Sheriff's Department. Captain Byrnes attested to the following:

> I am familiar with the facts of this case because I was the person who investigated the matter after Ms. Smith was allegedly assaulted. In conducting my investigation I spoke with Ms. Smith, Dannie Cauble, and other witnesses regarding the events made the basis of this suit. It is my opinion, based on my investigation, that Dannie Cauble performed in a reasonable manner. *It is also my opinion that a reasonably prudent officer, under the same or similar circumstances, could have believed that there was no reason to continue searching for an alleged intruder.* [Emphasis supplied.]

Captain Byrnes's affidavit clearly shows that "a reasonably prudent officer" in Deputy Cauble's position could have thought the facts were such that they justified Deputy Cauble's actions in searching Ms. Smith's house. Therefore, the County and Deputy Cauble met their summary judgment burden of proving Deputy Cauble's actions were in good faith.

However, that burden having been met, the burden of proof then shifted to Ms. Smith to controvert the County and Deputy Cauble's proof of good faith. *See City of Lancaster*, 883 S.W.2d at 656–57; *Tanner*, 928 S.W.2d at 736. In attempting to meet this burden, Ms. Smith submitted the affidavit of Charles A. Lewis, a fifteen-year veteran of the Fort Worth Police Department. Officer Lewis stated the following:

> I have participated in the search of hundreds of buildings and residences where illegal entry was suspected. I am familiar with Police Dept. procedures for searches of buildings and residences where illegal entry is suspected.
>
> . . . .
>
> It is my opinion that *no reasonable person in Deputy Cauble's position* on July 5, 1992, at the time of the search of the residence located at 8262 Retta, Mansfield Texas, *could have believed that a search that did not [include] the entire house was justified.*
>
> It is my opinion that *no reasonable person in Deputy Cauble's position could have thought the facts justified the incomplete search of Ms. Smith's residence, the failure to search the bedroom, the use of a flashlight with low batteries during the search, and the use of a civilian flashlight as opposed to a high powered flashlight used by peace officers to conduct a search.* [Emphasis supplied.]

We find that Officer Lewis's affidavit testimony that "*no* reasonable person" in Deputy Cauble's position could have thought the facts justified his actions in searching Ms. Smith's house, was sufficient to controvert Captain Byrnes's affidavit, and, therefore, create a material fact issue on the question of whether Deputy Cauble acted in good faith under the circumstances of this case. *See City of Lancaster*, 883 S.W.2d at 657. Points of error one and three are sustained.

### EXEMPTION FROM THE TORT CLAIMS ACT UNDER SECTION 101.055(3)

■■■ Deputy Cauble contends that the summary judgment may be affirmed on the

theory that the Tort Claims Act does not apply to claims arising "from the failure to provide or the method of providing police or fire protection." TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(3).[2] This argument is without merit. The Tort Claims Act applies exclusively to claims asserted against *governmental entities;* it does not apply to claims against individuals. *See id.* § 101.021 (Vernon 1986) (providing for liability of a *"governmental unit* in the state") (emphasis supplied); *id.* § 101.025(b) (a claimant under the Act "may sue a *governmental unit* for damages allowed by this chapter") (emphasis supplied); *id.* § 101.102(b) (requiring that the pleadings in a suit under the Act "name as defendant the *governmental unit* against which liability is to be established") (emphasis supplied); *see also Perales v. Kinney,* 891 S.W.2d 731, 733 (Tex.App.—Houston [1st Dist.] 1994, no writ) ("The Texas Tort Claims Act does not govern suits brought directly against an employee of the State...."); *Huntsberry v. Lynaugh,* 807 S.W.2d 16, 17 (Tex.App.—Tyler 1991, no writ) (Tort Claims Act does not apply when suit brought against State employee rather than governmental unit of the State). Furthermore, it is well-settled that the exemption in section 101.055(3) applies only to claims arising from the *formulation* of policy; the Act does not exempt claims arising from the negligent implementation of policy. *See, e.g., State v. Terrell,* 588 S.W.2d 784, 787–88 (Tex.1979); *City of Waco v. Hester,* 805 S.W.2d 807, 812 (Tex.App.—Waco 1990, writ denied); *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex. Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). This case does not involve a claim that either the County or Deputy Cauble was negligent in formulating police protection policy. For these reasons, we hold that the summary judgment in favor of Deputy Cauble cannot be supported on the basis of the exemption found in section 101.055(3) of the Act.

We affirm the summary judgment dismissing Ms. Smith's claims against the County.

We reverse the summary judgment for Deputy Cauble, and remand the case for trial.

---

**2.** Having already found that Ms. Smith has failed to state a claim that would invoke the Act's waiver of sovereign immunity, we need not reach the question raised by Ms. Smith in point of error five of whether the summary judgment in favor of the County is supportable on the ground that the County is exempt from the Act under section 101.055(3).