COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-043-CV
 
TONYA M. ARCHIBEQUE, INDIVIDUALLY                                        
APPELLANT
AND AS HEIR OF JANAE DEVRIES,
DECEASED
V.
NORTH TEXAS STATE HOSPITAL-                                                    
APPELLEE
WICHITA FALLS CAMPUS, AN
AGENCY OF DEFENDANT TEXAS
DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION
----------
FROM THE 30
TH
DISTRICT COURT OF WICHITA COUNTY
----------
OPINION
----------
I. Introduction
Appellant Tonya M. Archibeque, Individually and as heir of Janae Devries,
Deceased, appeals from the trial court's judgment granting appellee's plea to
the jurisdiction and dismissing her wrongful death and survival action. In her
sole issue on appeal, Archibeque contends appellee's sovereign immunity from
suit has been waived under the Texas Tort Claims Act(1)
because Devries's death was the result of the use or misuse of tangible personal
property. Because we conclude that appellee's immunity from suit has not been
waived, we will affirm the trial court's judgment.
II. Background Information & Procedural History
Archibeque's mother, Janae Devries, was a patient at North Texas State
Hospital, which is a part of the Texas Department of Mental Health and Mental
Retardation.(2) While at the hospital, Devries
allegedly committed suicide by covering her head with a trash bag and tying shoe
laces around her neck. Thereafter, Archibeque filed a wrongful death and
survival action,(3) seeking to recover damages
from appellee arising from Devries's death. Appellee filed a plea to the
jurisdiction, alleging that it was sovereignly immune from suit for tort
liability because the legislature had not consented to the suit. The trial court
granted the plea, and this appeal followed.
III. Standard of Review
A plea to the jurisdiction challenges the trial court's authority to
determine the subject matter of the action. Tex. Dep't of Transp. v. Jones,
8 S.W.3d 636, 638 (Tex. 1999). Whether the trial court had subject matter
jurisdiction is a question of law that we review de novo. Tex. Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Mogayzel
v. Tex. Dep't of Transp., 66 S.W.3d 459, 463 (Tex. App.--Fort Worth 2001,
pet. denied). The plaintiff has the burden of alleging facts that affirmatively
establish the trial court's subject matter jurisdiction. Tex. Ass'n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). In determining
whether jurisdiction exists, we accept the allegations in the pleadings as true
and construe them in favor of the pleader. Id.; Tex. Dep't of MHMR v. Lee,
38 S.W.3d 862, 865 (Tex. App.--Fort Worth 2001, pet. denied). We must also
consider evidence relevant to jurisdiction when it is necessary to resolve the
jurisdictional issue raised. Bland ISD v. Blue, 34 S.W.3d 547, 555
(Tex. 2000). No evidence was presented to the trial court in this case;
therefore, we look solely to Archibeque's pleadings to determine the
jurisdictional question.
IV. Sovereign Immunity From Suit
A. Use or Misuse of Property
Governmental entities such as appellee are immune from suit unless the
legislature has expressly consented to the suit. Jones, 8 S.W.3d at
638; Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997).
Absent legislative consent to sue a governmental entity, the trial court lacks
subject matter jurisdiction over the case. Jones, 8 S.W.3d at 638. The
Texas Tort Claims Act provides a limited waiver of sovereign immunity, allowing
suits to be brought against governmental agencies only in certain
narrowly-defined circumstances. Tex. Dep't of Criminal Justice v. Miller,
51 S.W.3d 583, 587 (Tex. 2001); see also Dallas County MHMR v. Bossley,
968 S.W.2d 339, 341 (Tex.) ("[T]he Legislature intended the waiver in the
Act to be limited . . . ."), cert. denied, 525 U.S. 1017 (1998).
Mere reference to the Act in a plaintiff's pleading does not establish the
State's consent to be sued and thus is not enough to confer jurisdiction on the
trial court. Miller, 51 S.W.3d at 587. Rather, "we must look to
the terms of the Act to determine the scope of its waiver," Kerrville
State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex. 1996), and then must
determine whether the particular facts alleged in the case before us come within
that scope. Tex. Natural Res. Conservation Comm'n v. White, 46 S.W.3d
864, 868 (Tex. 2001); Miller, 51 S.W.3d at 587.
Archibeque contends that she pleaded sufficient facts to show that her claims
fall within the Act's immunity waiver. She asserts that the Act waives
appellee's immunity from suit as to her claims because her claims are based on
appellee's negligence involving the use or misuse of tangible personal property.
Specifically, Archibeque alleges that appellee was negligent in providing
Devries, who had a history of suicidal tendencies, a plastic trash bag and shoe
laces, which she used to commit suicide. Archibeque also alleges that appellee's
employees negligently failed to use a flashlight to monitor Devries during
sleeping hours and negligently failed to properly diagnose Devries's condition
and mental status in her chart.
Section 101.021 of the Act provides that a governmental unit is liable for:

         (1) property damage, personal
 injury, and death proximately caused by the wrongful act or omission or the
 negligence of an employee acting within his scope of employment if:
 
         (A) the property damage,
 personal injury, or death arises from the operation or use of a motor-driven
 vehicle or motor-driven equipment; and
         (B) the employee would be
 personally liable to the claimant according to Texas law; and
 
         (2) personal injury and death so
 caused by a condition or use of tangible personal or real property if the
 governmental unit would, were it a private person, be liable to the claimant
 according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).(4)
Only section 101.021(2) is at issue in this case.
To state a claim under section 101.021(2), the plaintiff must allege that (1)
property was used or misused by a governmental employee and (2) the use
proximately caused personal injury or death. Bossley, 968 S.W.2d at
343; Lee, 38 S.W.3d at 867; Smith v. Tarrant County, 946
S.W.2d 496, 501 (Tex. App.--Fort Worth 1997, writ denied) (op. on reh'g).
"Use" means "to put or bring into action or service; to employ
for or apply to a given purpose." White, 46 S.W.3d at 869; LeLeaux
v. Hamshire-Fannett ISD, 835 S.W.2d 49, 51 (Tex. 1992). A mere allegation
of use by a governmental employee or the involvement of property is insufficient
to state a claim for which immunity has been waived under the Act; rather, the
use must have proximately caused the injury or death. Bossley, 968
S.W.2d at 343; see also Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30,
32-33 (Tex. 1983); Lowe v. Tex. Tech. Univ., 540 S.W.2d 297, 299-300
(Tex. 1976) (both construing phrase "personal injury and death so caused by
a condition or use of property" as meaning "when proximately caused by
the negligence or wrongful act or omission of any officer or employee acting
within the scope of his employment or office").(5)
Although the degree of involvement is difficult for courts to discern in certain
cases, the rationale and holdings of supreme court decisions make clear that
there must be a close causal relationship between the condition or use of the
property and the resulting injury. Lee, 38 S.W.3d at 867.
"Property does not cause injury if it does no more than furnish the
condition that makes the injury possible." Bossley, 968 S.W.2d at
343 (citing Union Pump Co. v. Allbritton, 898 S.W.2d 773, 776 (Tex.
1995)).
In this case, Archibeque asserts that appellee negligently used the trash bag
and shoe laces because appellee furnished them to Devries, who had a history of
suicidal tendencies, and failed to remove them from her room. Archibeque does
not explain what appellee used the trash bag and shoe laces for, but presumably
they were employed for their usual purposes: to collect trash and tie shoes.
Archibeque does not contend that Devries's death was caused by either the
collection of trash or the tying of her shoes; thus, Archibeque has not alleged
that Devries's death was proximately caused by appellee's use or misuse of the
trash bag and shoe laces. See Tex. Dep't of Criminal Justice v. Diller,
No. 12-02-003-CV, 2002 WL 31680829, at *3 (Tex. App.--Tyler Nov. 27, 2002, pet.
filed) (holding that prison employees' use of plastic mesh bag to transport
suicidal inmate's clothing, and failure to remove bag from inmate's cell, was
not proximate cause of inmate's subsequent suicide by hanging with the bag); see
also DART v. Whitley, 104 S.W.3d 540, 542-43 (Tex. 2003) (holding that DART
bus driver's ejection of handicapped passenger from bus and failure to return
for him as promised, so that he was severely beaten by another passenger who had
threatened him in front of driver, was not use of motor vehicle under section
101.021(1) that proximately caused passenger's injuries).
The mere presence of the trash bag and shoe laces in Devries's room did no
more than furnish the condition that made her death possible; it did not kill
Devries or cause her to engage in suicidal conduct. Although Devries's
use of the trash bag and shoe laces were part of a tragic sequence of events
that ended in her death, appellee's alleged use of these items was too
attenuated from her death to be said to have caused it. See Bossley,
968 S.W.2d at 343 (holding that unlocked doors at treatment facility, which
permitted patient to escape and later commit suicide, were too attenuated from
death to have caused it); Lee, 38 S.W.3d at 868 (holding that unlocked
doors, which permitted assailant to enter hypersexual and promiscuous patient's
room and sexually assault her, were too attenuated from patient's injuries to
have caused them); Bush v. Tex. Dep't of Protective & Regulatory Servs.,
983 S.W.2d 366, 369 (Tex. App.--Fort Worth 1998, pet. denied) (holding that
TDPRS's alleged misuse of intake questionnaires and forms, by stating thereon
that parental abuse allegations involving child were unfounded, was too far
removed from child's later death from abuse to have caused it).
The cases on which Archibeque relies are not on point. They involve either
the alleged misuse of medical equipment(6) or the
provision of property that lacked an integral safety component,(7)
and their precedential value is limited to their particular circumstances.(8)
Archibeque does not contend that appellee misused medical equipment or that the
trash bag and shoe laces in question lacked an integral safety component.(9)
The true substance of Archibeque's complaint is that Devries's death was
caused, not by appellee's use of the trash bag and shoelaces, but by the failure
of appellee's staff to exercise sufficient care in monitoring Devries due to her
suicidal history. This alleged failure does not fall within the Act's limited
waiver of immunity. See Lacy v. Rusk State Hosp., 31 S.W.3d 625, 630
(Tex. App.--Tyler 2000, no pet.); San Antonio State Hosp. v. Koehler,
981 S.W.2d 32, 37 (Tex. App.--San Antonio 1998, pet. denied) (both holding that
negligence in care or supervision of patient is not actionable under the Act).
B. Nonuse of Property
Likewise, Archibeque's allegations that appellee failed to use appropriate
flashlights to adequately check on Devries during sleeping hours; negligently
failed to note in Devries's chart her presence during room checks; and
negligently failed to properly diagnose Devries's condition and mental status in
her chart do not state a claim under the Act for two reasons. First, these
averments are simply allegations of the nonuse of property: the failure to use a
flashlight and Devries's medical chart. The nonuse of property cannot support a
claim under the Act. White, 46 S.W.3d at 869-70; see also Kassen v.
Hatley, 887 S.W.2d 4, 14 (Tex. 1994) (holding that nonuse of available
drugs during emergency medical treatment is not a use of tangible personal
property that triggers a sovereign immunity waiver); Gainesville Mem'l Hosp.
v. Tomlinson, 48 S.W.3d 511, 514 (Tex. App.--Fort Worth 2001, pet. denied)
(holding that aide's alleged failure to use intercom was nonuse of property for
which immunity was not waived).
Second, medical information and the paper on which it may or may not be
written is not tangible property under the Act. Kassen, 887 S.W.2d at
14; Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 175-76 (Tex.
1994). This is true whether or not the information and paper were properly used.
York, 871 S.W.2d at 175-76; accord Bush, 983 S.W.2d at 369
(applying York to allegation that TDPRS had failed to properly use
paper intake forms and questionnaires). The two cases to the contrary that
Archibeque cites have been disapproved or reversed by the supreme court. See
Tex. Dep't of MHMR v. Petty ex rel. Kauffman, 848 S.W.2d 680 (Tex. 1992)
(plurality op.), disapproved by York, 871 S.W.2d at 179; State v.
San Miguel, 981 S.W.2d 342 (Tex. App.--Houston [14th Dist.]
1998) (op. on reh'g), rev'd, 2 S.W.3d 249 (Tex. 1999). Accordingly,
Archibeque's allegations that appellee failed to use Devries's chart or failed
to properly record pertinent information therein do not state a claim under the
Act.
V. Conclusion
For all of the foregoing reasons, we hold that Archibeque failed to allege
facts that affirmatively established the trial court's subject matter
jurisdiction over her suit. Accordingly, the trial court properly granted
appellee's plea to the jurisdiction and dismissed Archibeque's claims. We
overrule Archibeque's sole point on appeal and affirm the trial court's
judgment.
 
                                                                      
JOHN CAYCE
                                                                      
CHIEF JUSTICE
 
PANEL B: CAYCE, C.J.; GARDNER and WALKER, JJ.
                   
WALKER, J. filed a dissenting opinion.
DELIVERED: August 14, 2003
 

 
COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-043-CV
 
TONYA M. ARCHIBEQUE, INDIVIDUALLY                                        
APPELLANT
AND AS HEIR OF JANAE DEVRIES,
DECEASED
V.
NORTH TEXAS STATE HOSPITAL-                                                    
APPELLEE
WICHITA FALLS CAMPUS, AN
AGENCY OF TEXAS
DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION
------------
FROM THE 30
TH
DISTRICT COURT OF WICHITA COUNTY
------------
DISSENTING
OPINION
------------
I. Introduction
I respectfully dissent. I cannot agree with the majority's proximate cause
analysis for two reasons. First, I cannot agree with the majority's conclusion
that Tonya Archibeque failed to properly plead proximate cause. Second, I cannot
agree with the majority's holding that North Texas State Hospital's use of the
trash bag in Janae Devries's room did no more than furnish the condition that
made her death possible and was too attenuated from Devries's death to be said
to have caused it. I would hold that Archibeque pleaded a waiver of sovereign
immunity, reverse the trial court's judgment, and remand this case to the trial
court.
II. Proximate Cause Under Section 101.021(2)
The Texas Tort Claims Act waives a governmental unit's sovereign immunity for
personal injury or death caused by use of tangible personal property if the
governmental unit would, if it were a private person, be liable to the claimant
according to Texas law.(10) Accepting the
allegations in Archibeque's pleadings as true and construing them in her favor,
as we must, she pleaded that the Hospital negligently used a trash bag by
placing it in a suicidal patient's room for the collection of trash.(11)
A trash bag is tangible personal property.(12)
Placing a trash bag in a patient's room is "use" of the trash bag.(13)
A private mental hospital would be liable to Archibeque according to Texas law
for negligently using an object by placing it in her suicidal mother's room when
the object could foreseeably be utilized to effectuate a suicide.(14)
Therefore, the only question remaining is whether, for purposes of triggering a
waiver of sovereign immunity under the Texas Tort Claims Act, Devries's death
was "caused by a condition or use of tangible personal or real
property,"(15) i.e., was proximately caused
by the Hospital's use of the trash bag.
The majority first holds that Archibeque failed to properly plead causation.
Specifically, the majority claims Archibeque did not plead that "Devries's
death was caused by either the collection of trash or the tying of her
shoes" so that "Archibeque has not alleged that Devries's death was
proximately caused by appellee's use or misuse of the trash bag and shoe
laces." I cannot agree. Archibeque pleaded that the Hospital negligently
"furnished trashbags and shoestrings, tangible property, to the Decedent
who had a history of suicidal tendencies," that the Hospital "[n]egligently
failed to remove shoestrings and trashbags . . . from [Devries's] room,"
and that "the foregoing acts and omissions . . . were a direct and
proximate cause of the injuries and damages sustained by Decedent and
Plaintiff." In my view, accepting the allegations in Archibeque's pleadings
as true and construing those allegations in her favor, she pleaded that the
Hospital's negligent use of tangible personal property, i.e., a trash bag in her
mother's hospital room, proximately caused her mother's death.(16) 
I cannot agree with the majority's conclusion that Archibeque was required to
allege the Hospital's physical collection of trash or tying of shoes caused
Devries's death in order to properly plead proximate cause under the tort claims
act.
The majority next holds that the Hospital's use of the trash bag did not
cause Devries's death; it only furnished the condition that made her death
possible. Again, I cannot agree. The causation standard embodied in section
101.021(2) is proximate cause.(17) Proximate
cause consists of cause in fact and foreseeability.(18)
The test for foreseeability is whether a person of ordinary intelligence would
have anticipated the danger his or her negligence creates.(19)
Cause in fact means that the defendant's act or omission was a substantial
factor in bringing about the injury that would not otherwise have occurred.(20)
Cause in fact is not shown if the defendant's negligence did no more than
furnish a condition that made the injury possible.(21)
The evidence "must go further and show that such negligence was the
proximate, and not the remote, cause of the resulting injuries" and
"justify the conclusion that such injury was the natural and probable
result thereof."(22)
At some point in the causal chain, however, the defendant's conduct may be
too remotely connected with the plaintiff's injury to constitute legal
causation.(23) In defining the limits of legal
causation, the courts have explained:

         [T]he law does not hold one
 legally responsible for the remote results of his wrongful acts and therefore
 a line must be drawn between immediate and remote causes. The doctrine of
 "proximate cause" is employed to determine and fix this line and
 "is the result of an effort by the courts to avoid, as far as possible
 the metaphysical and philosophical niceties in the age-old discussion of
 causation, and to lay down a rule of general application which will, as nearly
 as may be done by a general rule, apply a practical test, the test of common
 experience, to human conduct when determining legal rights and legal
 liability."(24)

Courts applying this too-remote-to-constitute legal causation principle
typically base the remoteness determination on a time gap between the negligence
and the injury, on the existence of intervening events, or on intentional
third-party conduct. A review of proximate-cause case law demonstrates that at
least one of these three distancing factors is present in every instance where
the courts have concluded that the plaintiff's injuries were so remote, so
attenuated, from the defendant's wrongful conduct that as a matter of law the
defendant could not be held responsible for the injuries.
Based on the time gap, intervening events, and intentional conduct by a third
party factors, the supreme court in Dallas Area Rapid Transit v. Whitley
held no legal causation existed as a matter of law.(25)
Whitley was assaulted and threatened with physical violence by a woman on a city
bus.(26) Observing the potentially violent
situation, the bus driver ordered Whitley to exit the bus, saying that he would
come back for him in a few minutes. The woman who had threatened to kill Whitley
exited the bus herself shortly thereafter, went directly home, recruited her son
and his friends to assault Whitley, and returned to the place the bus had left
Whitley. The woman and her recruits then severely beat Whitley.(27)
The supreme court held that the woman and her accomplices caused Whitley's
injuries, not the use of the bus.(28)
Based on the time gap factor, the supreme court in Union Pump Co. v.
Allbritton held that a pump explosion was not the legal cause of the
plaintiff's subsequent fall off a pipe rack:

         Even if the pump fire were in
 some sense a "philosophic" or "but for" cause of
 Allbritton's injuries, the forces generated by the fire had come to rest when
 she fell off the pipe rack. The fire had been extinguished, and Allbritton was
 walking away from the scene. Viewing the evidence in the light most favorable
 to Allbritton, the pump fire did no more than create the condition that made
 Allbritton's injuries possible. We conclude that the circumstances surrounding
 her injuries are too remotely connected with Union Pump's conduct or pump to
 constitute a legal cause of her injuries.(29)

Based on the time gap and intervening events factors, in Dallas County
Mental Health & Mental Retardation v. Bossley, the supreme court held
that a mental hospital's use of tangible property--unlocking the hospital
doors--and the doors' condition--being unlocked--were both too remote to
constitute the legal cause of a patient's death when the patient escaped through
the unlocked doors, ran half a mile, attempted to hitchhike on both sides of a
freeway, and leapt in front of an oncoming truck as he was about to be
apprehended.(30) The supreme court explained
that although the patient's escape through the unlocked doors was part of a
sequence of events that ended in his suicide, the use and condition of the doors
were too attenuated from the patient's death to be said to have caused it.
Based on the time gap factor, the supreme court in Bell v. Campbell
held that a wreck that left a trailer partially on the highway was as a matter
of law too attenuated to be a proximate cause of a subsequent accident where a
drunk driver hit the trailer and three passing motorists who stopped to help
move it off the highway.(31) The supreme court
explained:

         All acts and omissions charged
 against respondents [the individuals in the first wreck] had run their course
 and were complete. Their negligence did not actively contribute in any way to
 the injuries involved in this suit. It simply created a condition which
 attracted Payton, Bell and Bransford to the scene, where they were injured by
 a third party.(32)

Based on the time gap, intervening events, and intentional conduct by a third
party factors, in Texas Department of Mental Health & Mental Retardation
v. Lee, this court held that the Wichita Falls State Hospital's use of an
interior door by leaving it unlocked and the condition of another door leading
from the men's wing to the women's wing, having no locking device, were too
attenuated from Lee's sexual assault by an HIV-positive male patient to
constitute the legal cause of Lee's injuries under section 101.021(2).(33)
We held that "[t]he true substance of Lee's complaint is that the sexual
assault was caused, not by the condition or use of the hospital doors, but by
the failure of the hospital staff to protect her from her assailant when they
knew that [because of her illness] she was hypersexual."(34)
Based on the time gap, intervening events, and intentional conduct by a third
party factors, in San Antonio State Hospital v. Koehler, the appellate
court held that no legal causation existed as a matter of law when a patient
escaped from a mental hospital, accompanied by a male acquaintance, through a
hole in the fence surrounding the hospital and the acquaintance later sexually
assaulted the patient at a boarding house.(35)
The court explained that the intervening criminal act of the acquaintance
attenuated the causal nexus between the hole in hospital's fence and the
patient's injuries.(36)
Here, taking as true Archibeque's pleading that the Hospital furnished the
trash bag to Devries, who had a history of suicidal tendencies, by placing it in
Devries's hospital room and that while Devries was a patient of the Hospital she
sustained a fatal injury by placing the trash bag over her head, there is no
time gap, there are no intervening events, and there are no intentional acts by
third parties between the Hospital's alleged negligent use of the trash bag and
Devries's injuries. The Hospital allegedly negligently used the trash bag for
the collection of trash in Devries's hospital room; while the trash bag was
being used, Devries, a suicidal patient, killed herself with it. Unlike Union
Pump and Bell, the negligently caused event was not over when the
plaintiff's injuries occurred. Unlike Bossley and Koehler,
Devries did not escape the Hospital's custody, run away, and then leap in front
of an oncoming truck in Bossley's case or become the victim of a sexual assault
in Koehler's case. Devries was at the Hospital and in the Hospital's care when
she died. Unlike Whitley and Lee, the substance of
Archibeque's complaint is not the failure to protect Devries from a third party.
Archibeque's complaint is that the Hospital negligently used a trash bag in the
room of a suicidal patient.
The Hospital's alleged negligent use of a trash bag here is simply not so
remote or so attenuated from Devries's death that as a matter of law it cannot
constitute a proximate cause of Devries's death. None of the Whitley, Bossley,
Union Pump, Bell, Koehler, or Lee
too-remote-to-constitute legal causation facts are present here.(37)
No time gap exists between the Hospital's alleged negligence and Devries's
injuries. No intervening events occurred between the Hospital's alleged
negligence and Devries's injuries. No intentional acts occurred by a third party
between the Hospital's alleged negligence and Devries's injuries. No attenuating
facts exist at all on the record before us. A causal nexus exists between the
Hospital's use of the trash bag and Devries's death. A person of ordinary
intelligence would have anticipated the danger of placing a trash bag in the
room of a suicidal patient and the Hospital's use of the trash bag was a
substantial factor in bringing about Devries's death that would not otherwise
have occurred. Thus, I cannot agree with the majority's conclusion that the
Hospital's use of the trash bag in Devries's room was as a matter of law too
attenuated from Devries's death to be said to have caused it.
III. Conclusion
I would hold that Archibeque has pleaded a cause of action against the
Hospital falling within section 101.021(2)'s waiver of immunity. I therefore
would sustain Archibeque's sole issue, reverse the trial court's judgment, and
remand this case to the trial court.
 
                                                                      
SUE WALKER
                                                                      
JUSTICE
 
DELIVERED: August 14, 2003

[Majority Opinion Endnotes:]
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109
(Vernon 1997 & Supp. 2003).
2. Tex. Health & Safety Code Ann. § 532.001(a),
(b)(8) (Vernon 2003). We refer to North Texas State Hospital and the Texas
Department of Mental Health and Mental Retardation collectively as appellee.
3. See Tex. Civ. Prac. & Rem. Code Ann. §§
71.002-.004, 71.021 (Vernon 1997).
4. Although this provision speaks in terms of waiver of
immunity from liability, the Act also waives immunity from suit to the same
extent. Id. § 101.025(a); Miller, 51 S.W.3d at 587.
5. Salcedo and Lowe have been limited on
other grounds, see Bossley, 968 S.W.2d at 342-43, but not based on
their construction of this phrase.
6. See Salcedo, 659 S.W.2d at 32-33 (holding
immunity waived for claim that governmental unit negligently used
electrocardiograph machine); Baston v. City of Port Isabel, 49 S.W.3d
425, 428-29 (Tex. App.--Corpus Christi 2001, pet. denied) (following Salcedo).
7. See Robinson v. Cent. Tex. MHMR Ctr., 780
S.W.2d 169, 171 (Tex. 1989) (holding immunity waived for claim that epileptic,
mentally challenged patient was allowed to swim without a life preserver); Lowe,
540 S.W.2d at 300 (holding immunity waived for football player's claim that
coach required him to play without knee brace); Overton Mem'l Hosp. v.
McGuire, 518 S.W.2d 528, 529 (Tex. 1975) (holding immunity waived for claim
the patient was provided hospital bed without bed rails); see also McBride
v. TDCJ-ID, 964 S.W.2d 18, 22 (Tex. App.--Tyler 1997, no pet.) (following Lowe
and holding immunity waived for inmate's claim that provision of barrel with no
handles caused his injuries).
8. Salcedo has been limited to its facts. See
Bossley, 968 S.W.2d at 342. Robinson, Lowe, and McGuire
"represent perhaps the outer bounds of what [the supreme court has] defined
as use of tangible property," and their precedential value is "limited
to claims in which a plaintiff alleges that a state actor has provided property
that lacks an integral safety component and that the lack of this integral
component led to the plaintiff's injuries." Clark, 923 S.W.2d at
585.
9. We decline to follow San Antonio State Hospital v.
Cowan, 75 S.W.3d 19 (Tex. App.--San Antonio 2001, pet. granted). In that
case, the San Antonio Court of Appeals held that hospital employees
"misused" a suicidal patient's suspenders and walker, which he used to
commit suicide, by either not taking them from the patient upon his admission to
the hospital or later allowing him to use them. Id. at 23. The court
further held that the negligent provision of the walker and suspenders to the
patient proximately caused his suicide. Id. Cowan's reasoning
is based primarily on McGuire, which is inapposite to Cowan's
facts, because there was no allegation in Cowan that the suspenders and
walker lacked an integral safety component. See id. at 20-21; supra
n.8.
[Dissenting Opinion Endnotes:]
10. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)
(Vernon 1997).
11. See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993) (instructing, "[w]hen reviewing a trial
court order dismissing a cause for want of jurisdiction, Texas appellate courts
'construe the pleadings in favor of the plaintiff and look to the pleader's
intent'").
12. Univ. of Tex. Med. Branch v. York, 871
S.W.2d 175, 178 (Tex. 1994) (holding that "tangible personal property"
means something that has a corporeal, concrete, and palpable existence).
13. DART v. Whitley, 104 S.W.3d 540, 542 (Tex.
2003) (defining "use" under section 101.021(2) as to "bring into
action or service; to employ for or apply to a given purpose").
14. See, e.g., Mounts v. St. David's Pavilion,
957 S.W.2d 661, 663 (Tex. App.--Austin 1997, no pet.) (recognizing that a
psychiatric hospital is under a duty to exercise reasonable care to safeguard
the patient from any known or reasonably apprehensible danger from herself and
to exercise such reasonable care for her safety as her mental and physical
condition, if known, may require and upholding jury finding that hospital used
reasonable care in selection of shower curtain rod in patient's room); Harris
Hosp. v. Pope, 520 S.W.2d 813, 815 (Tex. Civ. App.--Fort Worth 1975, writ
ref'd n.r.e.) (recognizing psychiatric hospital's duty to patient).
15. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)
(emphasis added).
16. As correctly noted by the majority, no evidence was
presented to the trial court at the hearing on the Hospital's plea to the
jurisdiction.
17. Dallas County MHMR v. Bossley, 968 S.W.2d
339, 343 (Tex.) ("Section 101.021(2) requires that for immunity to be
waived, personal injury or death must be proximately caused by the
condition or use of tangible property.") (emphasis added), cert. denied,
525 U.S. 1017 (1998); Michael v. Travis County Hous. Auth., 995 S.W.2d
909, 912-15 (Tex. App.--Austin 1999, no pet.) (noting causation standard under
section 101.021(2) is proximate cause, not direct cause, immediate cause, or
sole cause).
18. Union Pump Co. v. Allbritton, 898 S.W.2d
773, 775 (Tex. 1995) (citing Travis v. City of Mesquite, 830 S.W.2d 94,
98 (Tex. 1992) (op. on reh'g); Mo. Pac. R.R. Co. v. Am. Statesman, 552
S.W.2d 99, 103 (Tex. 1977)).
19. S.W. Key Program, Inc. v. Gil-Perez, 81
S.W.3d 269, 274 (Tex. 2002).
20. Id.
21. Bell v. Campbell, 434 S.W.2d 117, 120 (Tex.
1968).
22. Carey v. Pure Distrib. Corp., 133 Tex. 31,
124 S.W.2d 847, 849 (1939).
23. Union Pump Co., 898 S.W.2d at 775.
24. Id. (quoting Springall v. Fredericksburg
Hosp. & Clinic, 225 S.W.2d 232, 235 (Tex. Civ. App.--San Antonio 1949,
no writ)).
25. 104 S.W.3d at 542-43.
26. Id. at 541.
27. Id. at 542.
28. Id. at 543.
29. 898 S.W.2d at 776.
30. Bossley, 968 S.W.2d at 343.
31. 434 S.W.2d at 122.
32. Id.
33. 38 S.W.3d 862, 868 (Tex. App.--Fort Worth 2001, pet.
denied).
34. Id. at 868.
35. 981 S.W.2d 32, 36-37 (Tex. App.--San Antonio 1998,
pet. denied); see also Bonham v. Tex. Dep't of Criminal Justice,
101 S.W.3d 153, 159 (Tex. App.--Austin 2003, no pet.) (recognizing guard's
sexual assault was intervening intentional act rendering layout of facility
alleged to be condition of property too remote to be cause in fact of guard's
assault).
36. Koehler, 981 S.W.2d at 37.
37. I have located no tort claims act case holding, in
the absence of attenuating facts, that nonetheless as a matter of law the
defendant's negligence is too remote from the plaintiff's injuries to constitute
legal causation and merely provided the condition that allowed the injuries to
occur.